**Raymond C. WELLS, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

No. 88 C 6938.

United States District Court, N.D. Illinois, E.D.

March 13, 1989.

Leigh R. Gignilliat, Gignilliat, Hymen, Zamparo & Goldstein, P.C., Northbrook, Ill., for plaintiff.

Gillum Ferguson, Ass't U.S. Att'y., Chicago, Ill., Debra L. Stefanik, David S. Newman, U.S. Dept. of Justice, Washington, D.C., for defendant.

## MEMORANDUM OPINION AND ORDER

SHADUR, District Judge.

Raymond Wells ("Wells") has sued for a permanent injunction against the United States and its agents, including the Internal Revenue Service ("IRS"), to enjoin the assessment and collection of certain withholding taxes assessed against Wells. In response the United States has filed a Fed. R.Civ.P. ("Rule") 12(b)(6) motion to dismiss the Complaint as barred by 26 U.S.C. § 7421(a)[1] and by sovereign immunity. Wells has responded by moving for summary judgment under Rule 56.[2] For the reasons stated in this memorandum opinion and order, the United States' motion is granted, Wells' is denied and this action is dismissed.

### Facts[3]

Wells is an officer of Wells Casting Company ("Casting"), which filed a Chapter 11 bankruptcy petition on November 17, 1982. It then owed $19,890.36 in unpaid social security and withholding taxes for its employees. Wells continued to manage Casting's affairs until April 24, 1986, when the Bankruptcy Court converted the case to a straight Chapter 7 bankruptcy. During its period in Chapter 11 Casting incurred further employment tax liability to the tune of $119,900.30 (Complaint ¶ 8).

Lawrence Cooper ("Cooper") was initially appointed trustee in the Chapter 7 proceeding. Cooper proceeded to convert the substantial liquid assets of the estate to his own use,[4] and as of the time that the current motions were briefed no assets remained.[5] At least at some time before

---

1. All further references to Internal Revenue Code provisions (found in Title 26) will take the form "Section—."

2. Although Rule 12(b) provides for conversion of a Rule 12(b)(6) motion into a Rule 56 summary judgment motion upon presentation of matters outside the Complaint, Wells has coupled his own Rule 56 motion only with his own affidavit reflecting (1) IRS' continued efforts to collect the taxes in issue after this action was filed and (2) the conversations described in the parenthetical clause indicated by an " * " in the "Facts" section of this opinion. Because the United States disputes neither of those matters and because the nature of the United States' Rule 12(b)(6) motion makes it fully dispositive (not the usual situation), this opinion will treat both motions as the parties have labeled them.

3. Rule 12(b)(6) requires this Court to accept all well-pleaded facts as true, as well as drawing all reasonable inferences in favor of plaintiff Wells

(*Marmon Group v. Rexnord,* 822 F.2d 31, 34 (7th Cir.1987)), while Rule 56 principles impose on movant Wells the burden of establishing the lack of a genuine issue of material fact, with a similar kind of inference drawing in favor of nonmovant United States (*Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986)). Here both parties agree that the potential tension between those principles creates no difficulties.

4. Cooper, whose depredations involved a large number of bankruptcy estates, has since been indicted and convicted of embezzlement.

5. After the briefing was completed Wells' counsel wrote a letter to counsel for the government, with a copy to this Court, advising that a settlement of more than $1 million had been reached with Cooper's bonding company—an amount that Wells' counsel suggested would "presumably" provide enough money to pay IRS' claim.

Cooper withdrew as trustee on May 29, 1987, the estate had enough money to satisfy the tax liability (and Wells' affidavit says he so advised IRS representatives on approximately 10 occasions after May 1, 1986*). Despite that, IRS did not collect the money owed, and on August 25, 1987 it billed the estate for $160,747.35 (Complaint Ex. 1).

In addition, IRS assessed Wells personally as a "responsible person" via the 100% penalty provided for in Section 6672. IRS has already levied on Wells' bank accounts and applied some of his personal taxes in part payment of Casting's liability. According to Complaint ¶ 28, IRS claims Wells owes $122,742.68,[6] and there is no question that it continues to demand payment and file liens.[7]

### Contentions of the Parties

At the outset (Mem. 2) the government advances the basic principle that suits against the United States are barred unless it has waived its sovereign immunity (*United States v. Mitchell*, 445 U.S. 535, 538, 100 S.Ct. 1349, 1351, 63 L.Ed.2d 607 (1980)). Having said that, however, the United States moves on to spend all its ammunition on the key statute in the case: Section 7421(a), the Anti–Injunction Act.

For his part Wells devotes no attention at all to the undeniable prerogative of the sovereign to be sued only with its consent or not at all. Because that proposition controls this case only in the negative sense—Wells must identify a specific pigeonhole into which his lawsuit fits, or else he loses—this opinion too will move on to more productive areas of discussion.

Where the parties do join issue is over the Anti–Injunction Act and the judicial gloss creating an equitable exception to

that statute. With exceptions not relevant here, Section 7421(a) reads:

> [N]o suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court by any person, whether or not such person is the person against whom such tax was assessed.

Despite that unequivocal language and the equally unequivocal nonsuability of the sovereign absent consent, *Enochs v. Williams Packing & Navigation Co.*, 370 U.S. 1, 6–8, 82 S.Ct. 1125, 1128–29, 8 L.Ed.2d 292 (1962) allows such injunctive relief if a two-prong test is satisfied:

> 1. Equity jurisdiction must otherwise exist.
>
> 2. It must be "clear that under no circumstances could the Government ultimately prevail."

*Williams Packing, id.* at 6–7, 82 S.Ct. at 1128–29 uses both "irreparable injury" and "inadequacy of the legal remedy," seemingly interchangeably, to describe the equity branch of the test. Our own Court of Appeals (speaking in the context of preliminary injunctive relief) has said those concepts are at least potentially separable (see, e.g., *Roland Machinery Co. v. Dresser Industries, Inc.*, 749 F.2d 380, 386 (7th Cir. 1984)). This opinion will speak to both locutions, whether or not they would merge if parsed in the way *Roland Machinery* suggests.

Wells urges he meets the first requirement no matter how it is framed. As for the second, Wells' Complaint ¶¶ 35–38 initially offered two reasons that the government cannot prevail:

> 1. Laches bar it from seeking the Section 6672 penalty, because it did not seek recovery from the bankruptcy estate when payment was available (Complaint ¶¶ 35–36).

---

This Court has not been advised the claim has been mooted, however, and has therefore proceeded with the pending motions.

**6.** That allegation and the exhibits tendered to this Court present an array of uncorrelated figures. In any event, both parties' memoranda indicate (and this Court accepts as true for this opinion) that only Section 6672 penalties and statutory additions are involved.

**7.** Wells' affidavit in support of his Rule 56 motion attaches a September 27, 1988 Notice of Levy directed to First Midwest Bank of Waukegan showing the same amount alleged in Complaint ¶ 28 plus another $12 in Section 6672 assessments plus $16,341.55 in statutory additions, for a total of $139,096.23.

2. Cooper's receipt of the bankruptcy estate, then sufficient to pay the taxes, amounted to constructive or actual payment to the government, which is barred from collecting them a second time (Complaint ¶¶ 37–38).

However, Wells has now dissociated himself from the first contention and relies entirely on the "double payment" argument (Wells Mem. 2, 7).

### Equity Jurisdiction

Wells complains he will be irreparably harmed by the collection of the 100% penalty (Complaint ¶¶ 33, 39). As proof of that assertion, he says the government's collection efforts to date have prevented him from satisfying his own tax liability.

■ But mere economic pressure, as contrasted with imminent financial ruin, is not enough. And it is well-established that the availability of a Section 7422 suit for a tax refund is an adequate remedy at law barring injunctive relief (see, e.g., *In re LaSalle Rolling Mills, Inc.*, 832 F.2d 390, 393 (7th Cir.1987)). Moreover, as United States Mem. 4 points out, Wells need only pay the employment taxes due for *one* employee for *one* quarter to contest the propriety of the tax in a refund suit.[8]

8. That is precisely what was suggested in *Williams Packing*, 370 U.S. at 5, 82 S.Ct. at 1128. True enough, *LaSalle Rolling Mills, id.* at 393 n. 8 says our Court of Appeals has not passed on that procedure. But it is indeed the typical pattern of "responsible person" withholding tax litigation in this District Court: Suit is begun by a taxpayer who has paid a small amount of the claimed taxes and seeks a refund, then the United States counterclaims for the much larger amount involved in the total dispute. That scenario gets around the problem that District Court jurisdiction is available only to taxpayers who pay their taxes and sue for refunds (unlike other taxes, those at issue here may not be brought to the Tax Court, *Williams Packing*, 370 U.S. at 2, 82 S.Ct. at 1126).

9. United States Mem. 3 asserts *Williams Packing* and *Bob Jones University v. Simon*, 416 U.S. 725, 94 S.Ct. 2038, 40 L.Ed.2d 496 (1974) stand for the proposition that "serious economic injury, even the destruction of a taxpayer's business" do not constitute irreparable injury. That really misstates *Williams Packing*, 370 U.S. at 6, 82 S.Ct. at 1129 (emphasis added), which really suggests the contrary:

■ At least on the present record—and that is all Wells can rely upon—Wells has not alleged or shown either irreparable harm [9] or lack of an adequate legal remedy.[10] This opinion will nevertheless turn to the second branch of the *Williams Packing* test.

### Double Payment

■ *Williams Packing*, 370 U.S. at 7, 82 S.Ct. at 1129 teaches:

Only if it is [apparent at the time of suit] that, under the most liberal view of the law and the facts, the United States cannot establish its claim, may the suit for an injunction be maintained.

Wells does not contest Casting's original liability for the employment taxes. Nor does he dispute that if Casting failed to pay, the 100% Section 6672 penalty would be properly imposed on him as a "person required to collect, truthfully account for, and pay over" those taxes. Finally, he does not quarrel with the notion that Section 6672 imposes a distinct and separate liability, which is not excused by later financial misfortunes of the corporation (see *Bernardi v. United States*, 74–1 U.S. Tax Cas. (CCH) ¶ 9170, at 83,215–16 (N.D.Ill.

[Section 1341] throws light on the proper construction to be given § 7421(a). It indicates that if Congress had desired to make the availability of the injunctive remedy against the collection of federal taxes not lawfully due depend upon the adequacy of the legal remedy, it would have said so explicitly. Its failure to do so shows that such a suit may not be entertained merely because collection would cause an irreparable injury, *such as* the ruination of the taxpayer's enterprise.

Though such financial ruin may thus qualify as "irreparable injury," Wells has not really alleged that (Complaint ¶ 33 is the only allegation touching on that issue, and it does not even approach what *Williams Packing* suggests might suffice).

10. Although proceeding under the protective mantle of an injunction would undoubtedly be less disruptive to Wells than continuing to be pressed for payment during the pendency of the kind of refund suit described in n. 8, it is not necessary that the available "avenues of review are the best that can be devised" (*Bob Jones University*, 416 U.S. at 747, 94 S.Ct. at 2051).

1973), *adopted and aff'd,* 507 F.2d 682 (7th Cir.1974) (per curiam)).

Instead Wells relies on a different but equally well established policy in the area of employment taxes. *LaSalle Rolling Mills,* 832 F.2d at 394 n. 9 explains:

> Both parties inform us that the long-standing policy of the IRS is to collect the amount of the unpaid withholding tax only once. That is, to the extent the corporation pays, the responsible person is relieved of liability for the penalty and vice versa.

As Wells would have it:

1. Enough money to pay IRS was delivered to trustee Cooper.

2. Cooper was under the direction and control of the United States Trustee.

3. Enough money therefore came into the control of the United States.

4. Casting therefore "paid" its taxes once, so the government could never prevail on its claim to collect them again.

Wells' counsel thus lacks nothing in ingenuity. But high marks for imaginativeness cannot substitute for legal analysis, and in those terms Wells must fail.

For one thing, a trustee in bankruptcy has long been held *not* to be an agent of the United States (see, e.g., *Cromelin v. United States,* 177 F.2d 275, 277 (5th Cir. 1949) ("He is in no sense an agent or employee or officer of the United States")). As United States R.Mem. 4 points out, a contrary result would continually put a trustee in an untenable position with regard to fiduciary duties owed both the United States and the bankrupt estate when treating governmental claims against the estate. It has therefore been the normal rule that funds in the trustee's hands are not in the control of the government.

Wells' position is that the creation of the United States trustee program (Pub.L. 95–598, Title II, § 224(a), 92 Stat. 2662 (1978), codified as amended at 28 U.S.C. §§ 581–589a) changed all that. Wells points to three of the statutory provisions:

1. Under 28 U.S.C. § 586(a)(1) the United States trustee is to "establish, maintain and supervise a panel of private trustees" such as Cooper was.

2. Under 28 U.S.C. § 586(a)(3) the United States trustee is also called upon to "supervise the administration of cases and trustees in [bankruptcy] cases."

3. Under 28 U.S.C. § 586(c) the United States trustee is under the "general supervision" of the Attorney General.

None of those provisions, either singly or in combination, establishes the type of control Wells seeks to ascribe here. What the United States trustee program was designed to do was to assume the administrative responsibilities in bankruptcy proceedings that had fallen previously to federal judges (see *In re A–1 Trash Pickup, Inc.,* 802 F.2d 774, 775–76 (4th Cir.1986) for a discussion of the legislative history of the trustee program). And of course the federal judge was not an agent of the government while administering bankruptcy proceedings (*Cromelin,* 177 F.2d at 277). Governmental payment of the judge's or the United States trustee's salary does not place either under the *control* of the United States (*id.*).

Wells likewise contends unpersuasively that 28 U.S.C. § 586(a)(4) requires the United States trustee to deposit or invest all funds received under Title 11 as required by 11 U.S.C. § 345. That Title 28 provision applies only where the United States trustee is actually acting as the trustee in bankruptcy in a specific case (which he or she is empowered to do in certain cases under 28 U.S.C. § 586(a)(2)). That was not true here, so the United States trustee was neither authorized nor required to deposit or invest funds in this case.[11]

In sum, there is no basis for saying the funds came into governmental control and can be viewed as having been "paid" as taxes when the money came to Cooper. Wells' theoretical construct cannot withstand scrutiny.

---

11. This Court is thus not called upon to decide whether Casting would have "paid" its taxes if it had been the United States trustee who was acting as the trustee and embezzled the funds.

■ Nothing daunted, Wells switches to another position entirely: He invokes a general principle of equity jurisprudence exemplified in such Illinois cases as *Hade v. Jontz,* 114 Ill.App.2d 120, 123–24, 252 N.E.2d 401, 403 (1969):

> As between two innocent parties, one of whom must sustain a loss occasioned by the wrongdoing of a third party, the loss must be sustained by that party who could have prevented the loss....

But Wells offers nothing either (1) to suggest why this Court should resort to Illinois law for such principles or (2) to identify whether any such principle would apply under the appropriate source of law.

This case involves the interface between two large bodies of federal law: the Internal Revenue Code and the Bankruptcy Code. That situation presents an a fortiori occasion for the application of the doctrine of such cases as *Banco Nacional de Cuba v. Sabbatino,* 376 U.S. 398, 425–27, 84 S.Ct. 923, 938–39, 11 L.Ed.2d 804 (1964), which teach that the analysis in situations that implicate the protection of "uniquely federal interests" calls for the creation of a body of "federal common law," rather than looking to state law under *Erie Railroad Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).[12]

This Court is not then required to look at Illinois law. It is of course possible that general equitable principles might play a part in the formation of a federal common law, but that is hardly a given—after all, the special position of the sovereign may well render conventional equitable maxims inapplicable.[13]

■ Certainly Wells has failed to present anything that would indicate he is likely to prevail on this issue, let alone meeting the *Williams Packing* criterion of

showing it is "clear that under no circumstances could the Government ultimately prevail." But even if Wells' invocation of Illinois law were to be taken at face value, he would still be unable to satisfy that standard:

1. In *Hade* and in the earlier Illinois case on which it relied, the third party was an agent of one of the parties. Here the trustee was not an agent (either of the United States trustee or of the government).

2. Even if agency is not required to trigger the *Hade* principle, it is not *clear* that the United States or its trustee "could have prevented the loss." Although 28 U.S.C. § 586(a)(3)(G) empowers the United States trustee to "monitor[ ] the progress" of bankruptcy cases and *id.* § 586(a)(3)(F) authorizes the United States trustee to notify the United States Attorney of any perceived crimes committed in the proceedings, neither of those provisions connotes an actual ability to have prevented Cooper's embezzlement.

In fact Wells really derails from the main line of the argument by shifting to the *Hade* branch. It will be recalled his defense is that the tax was already *paid to the government. Hade's* rule does not address that issue at all—it speaks instead of who should bear the burden when the tax is *not* paid.[14]

It is plain that Wells has not met the second requirement of *Williams Packing.* He has not even approached the necessary clear showing that the government could not ultimately prevail on the question whether the taxes in issue have already been collected.

### Conclusion

No genuine issue of material fact obscures the plain inadequacy of Wells' Com-

---

**12.** *Banco Nacional* was a diversity of citizenship case (*id.,* 376 U.S. at 421 & n. 20, 84 S.Ct. at 936 & n. 20), which created a specific *Erie* potential for looking to state law. In this case, based solely on federal question jurisdiction, any reference to state law would be far more problematic.

**13.** It is familiar doctrine, for example, that estoppel is dramatically different when sought to

be applied against the United States than it is against the ordinary private litigant.

**14.** This illogical shift of position by Wells typifies his grab-bag approach to this litigation. Perhaps that was to be expected, given the fact that suit for injunctive relief was filed despite the unequivocal bar imposed by the Anti-Injunction Act.

plaint. His suit for injunctive relief is barred by Section 7421(a) and does not fall under the limited *Williams Packing* judicial exception. Accordingly the United States' motion to dismiss is granted and Wells' motion is denied. Not only the Complaint but this action itself is dismissed.[15]

15. Wells' final filing on the current motion announces his plan to "seek leave to file an amendment to his complaint setting forth a separate Count prefacing the Court's jurisdiction under Section 7422(a) of the Code allowing suits for recovery under a claim for refund" (R.Mem. 4). Several brief comments are in order:

1. Any such attempt at a wholly new claim, based on facts that will have arisen *after* the original Complaint was filed, would of course be a supplemental rather than an amended pleading (contrast Rule 15(d) with Rule 15(a)).

2. As such, the contemplated new pleading would *not* moot dismissal of the present fatal-ly flawed Complaint for injunctive relief, as Wells suggests (R.Mem. 4).

3. Because this action is dismissed, any such new claim would represent a new lawsuit. Moreover, because the gravamen of the current action (and the very reason it fails) is its effort to obtain an injunction, while the anticipated new lawsuit would be a money claim, there is a question whether the new case would come within the category of "Refiling of Cases Previously Dismissed" so as to call for direct assignment to this Court's calendar under this District Court's General Rule 2.21(d)(2) rather than the conventional random assignment.