**Edward W. SPANNAUS, Plaintiff,**

v.

**CENTRAL INTELLIGENCE AGENCY, et al., Defendants.**

Civ. A. No. 92–410 SSH.

United States District Court, District of Columbia.

Dec. 30, 1993.

James H. Lesar, Washington, DC, for plaintiff.

Elizabeth A. Pugh, Jennifer E. Kaplan, U.S. Dept. of Justice, Civ. Div., Federal Programs Branch, Washington, DC, for defendants.

## OPINION

STANLEY S. HARRIS, District Judge.

Before the Court are defendants' motion for summary judgment, plaintiff's opposition, defendants' reply, plaintiff's supplemental filing, and defendants' surreply. Also before the Court are numerous affidavits. Although "[f]indings of fact and conclusions of law are unnecessary on decisions of motions under Rule 12 or 56," the Court nonetheless sets forth its analysis. *See* Fed.R.Civ.P. 52(a).

### Background

The present litigation under the Freedom of Information Act, 5 U.S.C. § 552 ("FOIA"), surrounds the secure voice communications system operated by the Central Intelligence Agency ("CIA"). Since August 1992, the CIA has operated a secure voice communications system between CIA headquarters and CIA overseas field stations to provide field stations located in volatile, hostile or unstable parts of the world with a secure means of speaking directly with headquarters. After learning of this technology through media coverage of the Iran–Contra prosecution, plaintiff submitted identical FOIA and Privacy Act requests to the CIA and the Office of Independent Counsel ("OIC"), requesting any secure voice communications records that mentioned plaintiff, Lyndon H. La-Rouche, Jr., Jeffrey Steinberg, Paul Goldstein, the Executive Intelligence Review (or EIR) magazine, the Schiller Institute, New Solidarity, the National Caucus of Labor Committees (or NCLC), or the LaRouche Organization or variations on that name. Plaintiff believes that the secure voice communication tapes or transcripts are likely to contain responsive information because of the involvement of LaRouche and his supporters in foreign policy affairs and intelligence operations.

Initially, the CIA refused to search the tapes or transcripts on the grounds that they had not been indexed. The OIC also did not search the tapes, and referred plaintiff's request to the CIA, the agency which generated the tapes, pursuant to 28 C.F.R. § 701.-12(b).[1] After the beginning of this litigation, the CIA and the OIC conducted several searches which did not reveal any responsive material. Additionally, plaintiff modified his request to narrow the class of tapes to be searched for references to the nine individuals and organizations listed in his original request.

Defendants contend that summary judgment is appropriate on the grounds that the searches thus far conducted are adequate under the FOIA and that further searches would be unreasonably burdensome. Plaintiff counters that the likelihood of the existence of responsive material and the possibility of conducting additional, more particularized searches create a genuine issue of material fact as to the adequacy of the searches.

### Discussion

To prevail on summary judgment in a FOIA action, as in any other, a defendant agency must show that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). In considering a summary judgment motion, all evidence and the inferences to be drawn from it must be considered in a light most favorable to the nonmoving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356,

---

1. The OIC obtained tapes made of certain conversations recorded on the CIA's secured voice communication system during the course of the Iran–Contra investigation.

89 L.Ed.2d 538 (1986). To meet its burden, an agency must prove that "each document that falls within the class requested either has been produced, is unidentifiable, or is wholly exempt from the Act's inspection requirements." *Goland v. Central Intelligence Agency,* 607 F.2d 339, 352 (D.C.Cir.1978), *cert. denied,* 445 U.S. 927, 100 S.Ct. 1312, 63 L.Ed.2d 759 (1980).

■ Defendants contend that they have discharged their FOIA obligations by conducting adequate searches which revealed no responsive material. The adequacy of an agency's search is governed by a standard of reasonableness, and is dependent on the circumstances of each case. *Weisberg v. Department of Justice,* 705 F.2d 1344, 1351 (D.C.Cir.1983). Because the agency is often in sole possession of the records and has conducted the information searches itself, the trial judge may rely on agency affidavits in determining whether an agency has met its burden of proof. *Perry v. Block,* 684 F.2d 121, 126 (D.C.Cir.1982); *Goland,* 607 F.2d at 352. The affidavits must be relatively detailed, nonconclusory, and submitted in good faith. *Goland,* 607 F.2d at 352 (citing *Vaughn v. Rosen,* 484 F.2d 820, 826 (D.C.Cir. 1973), *cert. denied,* 415 U.S. 977, 94 S.Ct. 1564, 39 L.Ed.2d 873 (1974). When an agency relies on affidavits to establish the adequacy of its search, the affidavits should identify the searched files and describe the structure of the agency's file system which makes further searches difficult. *Church of Scientology v. IRS,* 792 F.2d 146, 151 (D.C.Cir.1986). If the requester produces countervailing evidence placing the sufficiency of the identification or retrieval procedures genuinely in issue, summary judgment is inappropriate. *Founding Church of Scientology v. National Security Agency,* 610 F.2d 824, 836 (D.C.Cir.1979).

*The Adequacy of the CIA Search*

Over the life of the secure voice communications system, which has been in continuous use since August 1982, over 330,000 hours of tapes and reels have been collected through the use of three different types of recording technology. Declaration of Katherine M. Stricker ¶¶ 13–18. To track this information, the CIA maintains two sets of logs that reflect the daily activity that occurs on the secure voice communications system. *Id.* ¶ 9. These tape logs are compiled by the CIA's Office of Communications ("OC") and Directorate of Operations ("DO"). *Id.* The OC logs are produced daily and document all taping activity for a particular day. *Id.* ¶ 11. Each OC log contains the date, time, and origin of the calls, the name of the headquarters operator on duty, the general subject of the call, and, in some instances, the names of the individuals participating in a call. *Id.* These logs do not list the names of persons discussed or provide the detailed substance of the conversation. *Id.*

The DO logs are prepared weekly, and are derived from the OC logs. *Id.* ¶ 12. DO staffers extract references to actual calls from the OC logs, omitting technical information such as references to telecommunications jargon, system testing, and silent periods, and enter these records into a computer system which forms a database of all substantive calls. *Id.* The database can be searched by entering a name, subject, station location, or date. *Id.* In addition to the OC and DO logs, other written records which may reflect the contents of recorded conversations are any cables or memoranda produced following secure voice communications and secure voice communications transcribed for purposes of the Iran–Contra investigation. *Id.* ¶ 9.

In response to this litigation, the CIA conducted a computer search of the DO logs database for any references to the nine persons or organizations listed in plaintiff's request, as the subjects of discussions or as participants. *Id.* ¶¶ 10, 12. This search covered the time period from the institution of the secure voice communications system in 1982, to September 11, 1991, the search cutoff date. *Id.* ¶¶ 12, 18. The CIA also searched by name its overall DO records system database for any cables or memoranda making reference to the subjects of plaintiff's request. *Id.* ¶ 10. With respect to the secure voice communications transcribed for purposes of the Iran–Contra investigation, the CIA conducted a line-by-line search of the 2,000 pages of transcripts in its posses-

sion. First Supp. Stricker Declaration ¶ 27. No responsive documents were located. *Id.* The CIA contends that the only way to continue to process plaintiff's July 18, 1991, request would be to conduct a listening search of all of the tapes produced over the life of the system—approximately 337,857 hours—which it contends is unreasonably burdensome and not required by the FOIA. Stricker Declaration ¶¶ 17, 18.

In response, plaintiff modified his request by narrowing the subject areas to be searched, the relevant time periods, and geographic locations.[2] The CIA maintains that the terms of the new request do not affect the sufficiency and reasonableness of the earlier searches because the earlier searches, conducted on the CIA's records retrieval system, indicate that none of the nine individuals or organizations was ever recorded in the secure voice communications system logs as the subject of, or participant in, a secure voice communication. *Id.* ¶¶ 10, 12.

The practical effect of plaintiff's request is to narrow the number of tapes on which plaintiff's proposed additional listening searches would be done. To ascertain the burden that a listening search of this narrower class of tapes would impose, the CIA conducted a keyword search of the DO logs database, taking the terms from plaintiff's new request, which located 293 references. First Supp. Stricker Declaration ¶ 18, 19.[3] Although the CIA does not know exactly how many tape cassettes and reels contain the 293 references, it estimates that the refer-

ences would be located on hundreds of ninety-minute tapes. *Id.* ¶ 23. Accordingly, the CIA maintains, a listening search would still be unreasonably burdensome. *Id.* ¶¶ 22–26.

■ Based on the CIA's affidavits, the Court finds that its search is adequate as a matter of law. The affidavits describe in detail the information storage and retrieval system, the searches conducted, and why further searches would be difficult. *Church of Scientology*, 792 F.2d at 151. Although plaintiff expresses some skepticism about the limitations on the CIA's information retrieval system, plaintiff does not dispute the truthfulness of the CIA's affidavits describing its storage and retrieval system and the searches conducted to date. Instead, plaintiff primarily asserts that there is a genuine issue as to the adequacy of the CIA's search because of the purported likelihood that responsive material exists. *See* Declaration of Edward W. Spannaus; Declaration of Jeffrey Steinberg; Second Steinberg Declaration. The legal standard for evaluating the adequacy of a search, however, is not whether responsive material might conceivably exist, but whether the search for the material was adequate. *Perry*, 684 F.2d at 128; *Assassination Archives & Research Ctr. v. CIA*, 720 F.Supp. 217, 219 (D.D.C.1989), *aff'd in part*, No. 89–5414, 1990 WL 123924 (D.C.Cir. Aug. 13, 1990). Plaintiff's strong belief that responsive material must exist because of the involvement of LaRouche and his supporters in foreign policy affairs and the intelligence

**2.** Specifically, plaintiff modified his request to seek tapes or transcripts containing references to the above-named persons and organizations affiliated with LaRouche with respect to the following subject areas, time periods, and geographical areas:

    1. Communications emanating from or directed to CIA field stations in Central America during the years 1982–1986, insofar as they relate to the following subject areas: matters which pertain to (a) the Contra support operation; (b) the war on drugs and terrorism (narcoterrorism); and (c) Panama and General Manuel Noriega;

    2. Communications emanating from or directed to CIA field stations in the Philippines during the years 1985–1986; and

    3. Communications emanating from or directed to CIA field stations in the Soviet Union (Moscow) and the [sic] Eastern Europe (Berlin,

Warsaw) during the years 1982–1985 which pertain to strategic beam weapon defense policy discussions, later known as the Strategic Defense Initiative (SDI).

*See* Plaintiff's Opposition to Defendants' Motion for Summary Judgment, at 13.

**3.** The keywords used were: "For the years 1982–85—Contra; drugs; terrorism; narcoterrorism; Panama; General Manuel Noriega; For years 1985–1986—Philippines; For years 1982–85—Soviet Union; Moscow; Eastern Europe; Berlin; Warsaw; strategic beam weapon; Strategic Defense Initiative; SDI." First Supp. Stricker Declaration ¶ 18.

    In addition, the following geographical keywords were used: "For the years 1982–86—Central America; Panama; Philippines; Soviet Union; Moscow; Eastern Europe; Berlin; Warsaw." *Id.*

community is nothing more than speculation and, therefore, insufficient to raise a material question of fact with respect to the adequacy of the agency's search. *Oglesby v. United States Dep't of Army,* 920 F.2d 57, 67 n. 13 (D.C.Cir.1990).

Plaintiff also contends that the possibility of conducting additional searches creates a genuine issue of material fact as to the adequacy of the CIA's search. First, plaintiff points out that the CIA did not search the hard copies of the OC logs. Plaintiff's Opposition, at 17; Plaintiff's Supp. Mem., at 8. The CIA did not search the OC logs because the DO logs, which the CIA did search, are substantive extracts of the OC logs, omitting only technical information relating to the operation of the system. *Id.* ¶¶ 10, 11, 12; First Supp. Stricker Declaration ¶ 17. An agency's search "need not be perfect, only adequate, and adequacy is measured by the reasonableness of the effort in light of the specific request." *Meeropol v. Meese,* 790 F.2d 942, 956 (D.C.Cir.1986). Accordingly, "[t]here is no requirement that an agency search every record system." *Oglesby,* 920 F.2d at 68. Because a search of the OC logs would be duplicative of the search of the DO logs, the Court concludes that the CIA's failure to search the OC logs does not create a genuine issue of fact as to the adequacy of the search.

■ Plaintiff's other proposed search methods do not undermine the adequacy of the CIA's searches because they are not required by the FOIA. First, plaintiff alleges that the CIA can use sophisticated word-spotting technology to search the tapes. The CIA does not possess word-spotting equipment. First Supp. Stricker Declaration ¶ 26. Although there is some dispute as to the degree of effort that obtaining such equipment would entail, this issue is not relevant to the adequacy of the CIA's search. An agency is not required to obtain new equip-

ment to process a FOIA request. *Cf. Church of Scientology,* 792 F.2d at 150–51 (an agency is not required to reorganize its files to respond to a FOIA request). Second, plaintiff contends that the CIA's failure to perform a listening search to the class of tapes identified through plaintiff's modified request undermines the adequacy of the CIA's search. Plaintiff contends that the Court should not rely on the CIA's estimate that these references are located on hundreds of tapes, and suggests that the 293 references might be located on sufficiently few tapes such that a listening search would not be unreasonably burdensome. The Court finds that the CIA's failure to perform a listening search of the tapes and reels containing the 293 references does not create a genuine issue as to the adequacy of the CIA's search. Courts are to accord "substantial weight" to agency affidavits in national security cases. *Goland,* 607 F.2d at 352. Based on its knowledge of the storage system, the CIA has deduced that these references are located on hundreds of ninety-minute tapes and an undetermined number of reels. First Supp. Stricker Declaration ¶ 23. The FOIA does not require that the CIA conduct such a burdensome tape-by-tape listening search.[4] *See Goland,* 607 F.2d at 353–54; *Assassination Archives & Research Center,* 720 F.Supp. at 220. In summary, plaintiff's proposed additional searches do not create a genuine issue of material fact as to the adequacy of the CIA's search. Accordingly, the CIA's motion for summary judgment is granted.

## The Adequacy of the OIC Search

■ To ascertain which secure voice communication tapes and transcripts of tapes that the OIC possessed, the OIC searched its computerized databases for terms such as "tape," "tapes," "transcript," "transcripts," and an acronym used to identify the CIA's secure voice communications system. Decla-

4. Plaintiff also suggested other searches of particular documents which the CIA responded to either by conducting the proposed search or responding that it could not locate the document. Plaintiff's Opposition, at 17–18; First Supp. Stricker Declaration 27, 28; Second Supp. Stricker Declaration ¶ 12. The fact that the CIA did not conduct a listening search of the eleven-and-a-half hours of tape in the OIC's possession, which plaintiff urges, does not create a genuine issue of fact as to the adequacy of the search conducted because the CIA's search of the DO logs and related cables, memoranda, and transcripts, encompassed these tapes. Stricker Declaration ¶ 10.

ration of Pamela E. Krems ¶ 10. Through this search, and based upon institutional knowledge of the contents of OIC files, the OIC located tapes and written materials that reflected the contents of conversations recorded through the secured voice communications system.[5] Although the OIC had referred plaintiff's FOIA request to the CIA, the agency that had generated and classified the tapes, the OIC proceeded to conduct a line-by-line search of all transcripts and other written materials regarding the tapes because some of these materials had been generated by or for the OIC and such a search was not unreasonably burdensome. *Id.* ¶¶ 12–13. This search revealed no responsive documents. *Id.* ¶ 12. The OIC contends that a listening search of the eleven-and-a-half hours of tapes in its possession is not required because the OIC appropriately referred plaintiff's request to the CIA, which in turn conducted an adequate search of the relevant databases and found no responsive information.

Based on the OIC's affidavits, the Court finds that its search is adequate as a matter of law. The affidavits describe in detail how the tapes and related materials were systematically located and searched. *Church of Scientology,* 792 F.2d at 151. Although an agency cannot discharge its FOIA obligations simply by referring a request to another agency, *see McGehee v. CIA,* 697 F.2d 1095, 1110 & n. 71 (D.C.Cir.1983), the OIC's search efforts in this case were adequate despite its decision not to conduct a listening search of the tapes under the circumstances. In light of the OIC's line-by-line search of 138 pages of typed notes and 198 pages of handwritten notes detailing the results of an FBI agent's listening search to certain of the tapes in OIC's possession, the OIC's line-by-line search of other written materials regarding

the tapes, the CIA's computer search which encompassed the tapes in the OIC's possession, and the lack of any challenge by plaintiff to the adequacy of the OIC's search, requiring the OIC to perform a listening search of the eleven-and-a-half-hours of tapes in its possession would be unreasonably burdensome. *See Weisberg,* 705 F.2d at 151 (reasonableness of search depends on circumstances of each case). Accordingly, the OIC's motion for summary judgment is granted.

### Conclusion

For the foregoing reasons, the Court grants defendants' motion for summary judgment.

---

**5.** Specifically, the computer search revealed five and a half hours of tapes, 33 pages of transcribed conversation, 56 pages from the CIA's logs of voice communication activity, and a four-page transcript prepared by an OIC attorney. Krems Declaration ¶ 11. The search based on institutional knowledge of OIC files revealed a three-page transcript, five pages of CIA logs, six hours of tapes, a 15-page tape recording summary containing brief descriptions of certain taped conversations, and a document detailing the results

of a listening search that an FBI agent conducted of certain CIA tapes. *Id.* Two months later, in the course of preparing discovery in another case, the OIC located another seven-page transcript made from the voice communication system. Supp. Krems Declaration ¶ 4. The OIC performed a line-by-line search for references to plaintiff or the other named individuals or organizations. *Id.* No responsive documents were located.