Fred W. ALLNUTT, Sr.

v.

**UNITED STATES DEPARTMENT OF JUSTICE, et al.**

**Civil Nos. Y–98–901, Y–98–1722.**

United States District Court,
D. Maryland.

May 23, 2000.

Fred W. Allnutt, Sr., pro se.

Lynne A. Battaglia, U.S. Attorney, and Tamera L. Fine, Baltimore, MD, for Defendant Office of U.S. Trustee, Region Four.

Melissa A. Holton, Washington, DC, for Defendants U.S. Dept. of Justice and U.S. I.R.S.

**MEMORANDUM OPINION**

JOSEPH H. YOUNG, Senior District Judge.

### I.

This case is before the Court on objections to a Report and Recommendation ["Report"] prepared by U.S. Magistrate Judge Paul W. Grimm ["the Magistrate Judge"] to resolve various pending motions in these consolidated cases. The motions concern two claims filed pursuant to the Freedom of Information Act ["FOIA"] by the Plaintiff, Fred W. Allnutt, Sr. ["Allnutt"], against the United States Internal Revenue Service ["IRS"], the United States Department of Justice ["DOJ"], and the Office of the United States Trustee ["U.S. Trustee"]. The Magistrate Judge filed his Report on March 6, 2000, and the parties filed objections and supporting memoranda.

Federal Rule 72(b) requires the Court to "make a de novo determination upon the record, or after additional evidence, of any portion of the magistrate judge's disposition to which specific written objection has been made[.]" Fed.R.Civ.P. 72(b). The Court may then accept, reject, or modify

the magistrate judge's recommended decision, take new evidence, or remand the case to the magistrate judge with instructions. *Id.* For the reasons that follow,[1] the Court accepts the Magistrate Judge's recommendations with minor modifications.

## II. *Factual Background*[2]

In 1982, Allnutt ceased filing federal income tax returns claiming that there is no law requiring individuals to file returns or pay a tax on income. After the IRS entered and seized Allnutt's business, he filed for bankruptcy and was subsequently indicted for conspiracy and tax evasion. Allnutt was acquitted at trial, and thereafter filed a series of FOIA requests seeking to "reveal to the American public how the IRS, the bankruptcy courts, and the chapter 11 trustees and their law firms work together to 'process' thousands of human beings each year ... [and] collude together to plunder the American men and women whom they choose to ensnare in their behind-closed-doors corruption."

In March 1998, Allnutt filed a FOIA request with the Tax Division at DOJ seeking various documents pertaining to his bankruptcy case. After DOJ acknowledged his request, Allnutt filed suit in this court claiming that DOJ improperly withheld agency records. DOJ subsequently released forty-nine responsive documents and notified Allnutt that it had located 100 additional documents. Of these latter documents, DOJ noted that it was withholding all or part of sixteen documents as exempt under the FOIA, and it would condition release of the remaining records on Allnutt's payment of duplication costs. In May 1999, DOJ moved for summary judgment. Allnutt opposed the motion and filed a motion to show cause, in which he claims (a) DOJ is wrongfully withholding

documents and (b) he is entitled to a fee waiver under the FOIA.

Between November 1997 and January 1998, Allnutt filed a series of FOIA requests with the IRS, seeking a variety of documents relating to the power of the U.S. Government to tax individuals, and the statutory and regulatory authority of the IRS to collect taxes and engage in criminal proceedings. The IRS released all responsive documents, but informed Allnutt that it would not search for documents that require the agency to perform research or engage in doctrinal discussions. Allnutt filed a complaint and later moved for summary judgment, alleging that IRS wrongfully withheld documents and failed to respond to his FOIA requests. The IRS subsequently located 1260 pages of responsive materials, of which 150 pages were withheld in full and 55 in part pursuant to FOIA exemptions. The IRS then moved for summary judgment, and Allnutt moved to strike several declarations filed by the IRS in support of its summary judgment motion.

In September 1997, Allnutt filed a FOIA request with the U.S. Trustee, which produced over 1000 responsive documents in November 1998. The agency produced an additional 1440 pages in response to Allnutt's December 1997 request. On January 23, 1998, Allnutt submitted an additional request for records pertaining to a bank account created during his bankruptcy case. The U.S. Trustee notified Allnutt on February 6, 1998, that it had searched its records and found no additional documents responsive to the January 1998 request, and on March 12, 1998, informed Allnutt that it had no jurisdiction over records maintained by other federal agencies or private individuals. Allnutt filed a complaint against the U.S. Trustee on

---

1. Because this matter is pending before the Court on various motions for summary judgment, the well-settled principles of summary judgment apply. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Celotex Corp. v. Catrett,*

477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

2. The facts underlying the present action are well-documented in the Report; therefore, a short review will suffice here.

June 1, 1998, alleging that its response to his January 23, 1998, request violated the FOIA. The U.S. Trustee moved for summary judgment, as did Allnutt.

### III. *Motions Concerning the IRS*

The Magistrate Judge's Report recommends granting the IRS motion for summary judgment and denying Allnutt's motion for summary judgment and motions to strike. The Court will fully adopt the Magistrate Judge's conclusions as to Allnutt's motions to strike, the findings as to the adequacy of the IRS search, and the findings as to the legitimacy of the IRS claimed exemptions. Some discussion is necessary, however, in response to Allnutt's objections.

Allnutt objected to the Report on the grounds that the record of this case contains "IRS documents Allnutt obtained from other sources which show that the IRS has failed to release all responsive documents." To support this contention, Allnutt refers to his Rule 56 affidavit filed with his opposition to the IRS motion for summary judgment. The affidavit, in turn, asserts that the IRS did not perform a reasonable search given that Allnutt has acquired one document he believes to be within the scope of one of his various FOIA requests. This document, attached to the affidavit, purports to be an IRS "Standard Position Description" for IRS criminal special agents [hereinafter "the Position Description"]. Based on this document, Allnutt asserts that "as a matter of law, other similar documents exist," but were not released by the IRS.

 The touchstone for federal court review of agency FOIA compliance is the reasonableness of the agency's search. *See Ethyl Corp. v. United States Environmental Protection Agency,* 25 F.3d 1241, 1246 (4th Cir.1994). The agency is not charged with unearthing every potentially responsive document; rather, it must conduct a search reasonably calculated to find all relevant documents. *See id.* The first necessary corollary to this standard is that

the agency need not examine in detail every document within its control. *See Jimenez v. F.B.I.,* 938 F.Supp. 21 (D.D.C. 1996). Another corollary is that the agency's efforts are not necessarily impugned by proof that a reasonable search did not uncover a particular relevant document. *See Weisberg v. United States Dep't of Justice,* 745 F.2d 1476, 1485 (D.C.Cir. 1984); *Canning v. U.S. Dep't of Justice,* 848 F.Supp. 1037, 1050 (D.D.C.1994). Finally, it follows that a FOIA requestor cannot undermine the reasonableness of the agency's search by mere speculation that uncovered documents may exist. *See SafeCard Services, Inc. v. S.E.C.,* 926 F.2d 1197 (D.C.Cir.1991). Even if the plaintiff expresses a "fervent belief" that there must be other documents responsive to his requests, that belief is not sufficient to create a material factual dispute necessitating a trial. *Spannaus v. Central Intelligence Agency,* 841 F.Supp. 14, 19 (D.D.C. 1993).

In this case, Allnutt has certainly expressed a strong belief that the IRS has failed to locate other documents responsive to his requests, a belief he attempts to substantiate with the Position Description. Nevertheless, even if the Position Description were responsive, Allnutt has not provided any evidence that would taint the IRS search methodology, good faith, or the adequacy of its search. The pertinent question is whether the IRS search was reasonable. The Magistrate Judge found that it was, the Court agrees, and Allnutt has set forth no facts that would undermine this conclusion.

 Moreover, even if the Court were inclined to question the IRS search, it must be noted that Allnutt failed to meet his Rule 56 burden to set forth "specific facts" demonstrating an issue for trial. In particular, absent any explanation of how Allnutt's FOIA requests would have elicited the Position Description at issue, the Court is unable to see how this document impugns the reasonableness of the IRS search. As the non-movant, Allnutt bears

the burden of setting forth the "specific facts" required by Rule 56. Because he has failed to provide any link between the Position Description and his FOIA requests, Allnutt has failed to meet his Rule 56 burden.[3] The Court holds, therefore, that there is no issue of material fact as to the reasonableness of the IRS search and the IRS motion will be granted.

## IV. *Motions Concerning the U.S. Trustee*

The Magistrate Judge's Report recommends granting the U.S. Trustee's motion for summary judgment and denying Allnutt's summary judgment motion. Allnutt filed objections to the Report and the U.S. Trustee filed a memorandum supporting the Magistrate Judge's recommendations. The Court will adopt the Magistrate Judge's recommendations, but some discussion is necessary to clarify the Court's rationale and address the objections Allnutt has raised.

Allnutt argues first that the Court should only consider his January 23, 1998, FOIA request as a part of this case. The Court agrees. Allnutt's September 25, 1997, request has already been addressed by the U.S. District Court for the District of Columbia, *see Allnutt v. United States Trustee, Region Four,* No. 97–02414 (D.D.C. July 31, 1999), and the reasonableness of the U.S. Trustee's search in response to that request will not be reexamined in this Court.

In his January 23, 1998, request, Allnutt asked for the "Account Number for the First National Bank of Maryland bank account that your Panel Trustee, Mark J. Friedman, listed in the Monthly Operating

Reports he filed in my bankruptcy case." He also requested "all documents within your office, your 'other offices,' and your 'other establishments' pertaining to this account." The U.S. Trustee asserts that (a) it had already provided all responsive documents relating to Allnutt's case in response to his September 1997 FOIA request; (b) the January 1998 request was a request for additional documents; (c) the agency searched its records and found no new documents; and (d) the agency denied Allnutt's request for documents from the Panel Trustee on the grounds that such records are not "agency records" given that they are outside of the U.S. Trustee's control. Allnutt contends that the U.S. Trustee has failed to supply all records responsive to his January 23, 1998, request, in particular, documents held by the Panel Trustee.

The central issue is whether the U.S. Trustee has "demonstrated that it has conducted a search reasonably calculated to uncover all relevant documents." *Ethyl Corp.,* 25 F.3d at 1246. One federal court has already concluded that the U.S. Trustee conducted an adequate search in response to Allnutt's September 1997 request. *See Allnutt,* No. 97–02414, slip op. at 5–6. In accord with basic res judicata principles, the Court accepts this conclusion.

 Directly at issue here, however, is the January 1998 request, where Allnutt solicited additional information relating to his bankruptcy case. The U.S. Trustee responded by informing Allnutt that it performed another search and located no additional documents within its control that

---

**3.** The record also indicates that even if he had tried, Allnutt could not have established this link. The Position Description does not fall within Allnutt's first FOIA request, nor does it seem to fall within his second or third requests. Although the second request covered "all documents containing the name, title, and position" of each person involved with the "raid" and "seizure" of Allnutt's property, no evidence in the record indicates that the Position Description contains this informa-

tion. Similarly, the Position Description does not qualify as a "formal declaration[ ] of authority" involving the IRS chain-of-command, as Allnutt requested. Finally, this record would not qualify as the "certification of statutory and regulatory authority" of the IRS mentioned in Allnutt's third request. Aside from these references, the Court cannot identify any portion of Allnutt's FOIA requests that would have required the IRS to produce the Position Description.

pertain to his bankruptcy case. When a citizen has made an initial FOIA request to an agency, then requests additional documents, the agency must respond in writing; however, to force the agency to provide the same documents again would be an undue burden. *See U.S. Dep't of Justice v. Tax Analysts*, 492 U.S. 136, 152, 109 S.Ct. 2841, 106 L.Ed.2d 112 (1989); *Spannaus v. Central Intelligence Agency*, 841 F.Supp. 14, 19 (D.D.C.1993). Similarly, when the initial request is so broad as to encompass nearly all documents relating to a particular issue, the methodology of the first search has been explained by the agency and held to be adequate, and the citizen was granted access to all responsive documents, the Court will not require the agency to prove for a second time that its search methods were reasonable.

Here, the U.S. Trustee, in light of Allnutt's previous FOIA request, construed his January 1998 request to be a request for additional documents. *See* Barnhill Declaration ¶¶ 12–13. Given the broad scope of the 1997 request, the Court finds no reason to question the U.S. Trustee's interpretation. The U.S. Trustee then notified Allnutt that it had conducted a search for additional documents in response to his request, but found none. *See id.* The Court is satisfied that this search is all that the FOIA required of the U.S. Trustee.[4]

Nonetheless, Allnutt contends that the U.S. Trustee's January 1998 search could not have been adequate, as a matter of law, because the U.S. Trustee failed to turn over certain documents in the possession of the bankruptcy trustee, Mark Friedman. Allnutt claims that Friedman's records qualify as "agency records" within the control of the U.S. Trustee because the private bankruptcy trustee is an agent of the U.S. Trustee.

■ The Court disagrees. In response to a FOIA request, an agency is required to produce "agency records," which are those records either created or obtained by the agency and subject to the control of the agency when the request is made. *See Tax Analysts*, 492 U.S. at 144–45, 109 S.Ct. 2841. The records held by Friedman, however, were not subject to the control the U.S. Trustee. Trustees of bankruptcy estates are "private trustees." *See* 28 U.S.C. § 586(a)(1). They are not employees of the U.S. Trustee or the Department of Justice. *See Allnutt*, No. 97–02414, slip op. at 6. Nor are they agents of the U.S. Trustee or the federal government. *See Cromelin v. United States*, 177 F.2d 275, 277 (5th Cir.1949)("The trustee .... is in no sense an agent or employee or officer of the United States."); *Wells v. United States*, 98 B.R. 806, 810 (N.D.Ill. 1989). Considering this legal backdrop, the Court agrees that extending the FOIA "to embrace private trustees such as Friedman 'would be to extend the reach of the Act beyond what we believe Congress intended.'" *See Allnutt*, No. 97–02414, slip op. at 7 (quoting *Forsham v. Harris*, 445 U.S. 169, 186, 100 S.Ct. 977, 63 L.Ed.2d 293 (1980)). Consequently, the Court adopts the Magistrate Judge's recommendation and will grant the U.S. Trustee's motion for summary judgment.

## V. *Motions Concerning DOJ*

The Magistrate Judge's Report recommends a partial grant of DOJ's motion for summary judgment and Allnutt's motion to show cause. Specifically, the Report suggests that the Court grant summary judgment to DOJ on the issue of withholding records pursuant to the FOIA exemption for interagency memoranda. Further, the Report recommends that the Court deny

---

4. Allnutt provides little to inform the Court about the types of records he hoped to obtain by this second request, focusing instead on the alleged inadequacy of the record supporting the agency's second search. As noted, the record supports the conclusion that the U.S.

Trustee performed an adequate search in response to the broad September 1997 request, then searched its records again in response to the January 1998 request. The Court is satisfied that the U.S. Trustee met its FOIA burden.

summary judgment to DOJ on (1) the issue of withholding records under FOIA's law enforcement exemption; and (2) the issue of whether DOJ improperly withheld documents from Allnutt by requesting advance payment for duplication costs. The Report also recommends denying Allnutt's motion to show cause insofar as he seeks a fee waiver under FOIA.

The Court will adopt the Magistrate Judge's recommendations as to the inter-agency memoranda, fee waiver, and advance payment issues. Because neither, side has objected to the Report's findings in these areas, the Court finds no need for further discussion. In contrast, DOJ has strenuously objected to the Magistrate Judge's recommendation regarding the law enforcement exception. The following discussion addresses this issue and explains the Court's modification to the remedy recommended by the Magistrate Judge.

 Pursuant to the FOIA, federal courts have the authority to enjoin "an agency from withholding agency records and to order the production of any agency records improperly withheld from the complainant." 5 U.S.C. § 552(a)(4)(B). Unless the agency has (1) improperly (2) withheld (3) agency records, federal courts lack jurisdiction to devise a remedy. *See Tax Analysts*, 492 U.S. at 142, 109 S.Ct. 2841. In cases where an agency has withheld records, it bears the burden of demonstrating that it has not done so "improperly." *See id.* at 142 n. 3, 109 S.Ct. 2841. An agency that withholds records under a FOIA exemption bears the burden of demonstrating that the disputed record falls within the claimed exemption. *See Ethyl Corp.*, 25 F.3d at 1245.

Here, DOJ has withheld one record, Document 10, pursuant to the law enforcement exemption.[5] DOJ claims that Docu-

ment 10 "was generated as part of the government's handling of its case in [All-nutt's] Bankruptcy Case," and the passages withheld by DOJ contained "computer command codes that were used to access IRS databases that contained taxpayer information." According to DOJ, these computer codes are not known to the public, and access to them could lead to circumvention of the law.

 The Court agrees with the Magistrate Judge that DOJ failed to meet its summary judgment burden of demonstrating that Document 10 falls within the law enforcement exemption. Congress enacted the FOIA to instill a "general philosophy of full agency disclosure." *Tax Analysts*, 492 U.S. at 142, 109 S.Ct. 2841 (internal quotations omitted). With this philosophy as a guide, courts have cautioned that FOIA exemptions are to be construed narrowly. *See Ethyl Corp.*, 25 F.3d at 1245. The exemption for law enforcement records requires a two-part inquiry. First, the agency must demonstrate that the record was "compiled for law enforcement purposes." *See Federal Bureau of Investigation v. Abramson*, 456 U.S. 615, 622, 102 S.Ct. 2054, 72 L.Ed.2d 376 (1982). If the agency meets that threshold, then it must also show that release of the material would have one of the six results specified in § 552(b)(7) of the FOIA. *See id.*

 In this context, the phrase "law enforcement" refers to both civil and criminal proceedings. *See Moore–McCormack Lines, Inc. v. I.T.O. Corporation of Baltimore*, 508 F.2d 945, 949 (4th Cir. 1974). To determine whether a particular record was compiled for law enforcement purposes, courts will consider the law enforcement powers of the withholding agency, *see Church of Scientology of California*

---

5. This provision excludes from the FOIA any "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information .... would disclose techniques and procedures for law enforce- ment investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law[.]" 5 U.S.C. § 552(b)(7)(E).

*v. United States Dep't of the Army,* 611 F.2d 738, 748 (9th Cir.1979), as well as the purposes underlying the exemption, *see Moore–McCormack Lines,* 508 F.2d at 949. The determinative factor, however, is not the role of the agency, but the purpose for which the agency compiled the document. To qualify as having a law enforcement purpose, records must generally arise during the course of an investigation, and they must involve the detection or punishment of violations of law. *See Freeman v. U.S. Dep't of Justice,* 723 F.Supp. 1115, 1122–23 (D.Md.1988); *see also Ortiz v. United States Dep't of Health and Human Serv.,* 70 F.3d 729, 732–33 (2d Cir. 1995); *Malizia v. U.S. Dep't of Justice,* 519 F.Supp. 338, 347 (D.C.N.Y.1981).

There is no dispute that the DOJ Tax Division performs a law enforcement function, at least in some cases. In addition, DOJ is not precluded from claiming the law enforcement exemption for Document 10 simply because it was compiled during civil litigation. Nevertheless, DOJ has failed to demonstrate that Document 10 was compiled for law enforcement purposes. DOJ argues flatly that (a) it is a law enforcement agency, and (b) it prepared this information in the course of civil bankruptcy litigation; therefore, the record must fall under the law enforcement exemption. There are two shortcomings to this argument. First, not every record compiled by a law enforcement agency automatically qualifies as a law enforcement record under § 552(b)(7)(E), even if it is compiled in the course of litigation. *See Church of Scientology,* 611 F.2d at 748. The FOIA clearly requires that the record be compiled for "law enforcement purposes." As noted earlier, it is the purpose of the record, not the role of the agency, that is determinative. *See Pratt v. Webster,* 673 F.2d 408, 420–21 (D.C.Cir.1982); *Church of Scientology,* 611 F.2d at 748; *Freeman,* 723 F.Supp. at 1122–23.

The second shortcoming in DOJ's argument is that the summary judgment record lacks any evidence to support the conclusion that Document 10 was compiled for law enforcement purposes. In particular, the court record contains almost no explanation of how Document 10 was generated, what its original purpose was, or how it came to be used in the bankruptcy case. Absent such background information, the Court is unable to understand how the bankruptcy proceeding that generated the record qualifies as a law enforcement activity. Given that DOJ bears the burden of proving it is entitled to the exemption, and considering that the general aim of FOIA to make agency records available to the public, the Court must deny DOJ's motion on this issue.

In recognition of the allegedly sensitive nature of Document 10, the Court will require DOJ to submit it for in camera review. *See* 5 U.S.C. § 552(a)(4)(B). Once the Court has reviewed the document, DOJ will be permitted to renew its motion for summary judgment.

## VI. *Conclusion*

Based on the foregoing analysis, the Court adopts the Magistrate Judge's recommendations [6] subject to the minor modifications detailed in this Memorandum and Order.

**6.** The Court also accepts the Magistrate Judge's recommendation with regard to All- nutt's request for attorneys fees.