**ETHYL CORPORATION,**
Plaintiff–Appellant,

v.

**UNITED STATES ENVIRONMENTAL
PROTECTION AGENCY,**
Defendant–Appellee.

No. 93–1768.

United States Court of Appeals,
Fourth Circuit.

Argued Feb. 10, 1994.

Decided June 1, 1994.

**ARGUED:** John Jay Range, Hunton & Williams, Washington, DC, for appellant. Timothy David Backstrom, Office of General Counsel, Environmental Protection Agency, Washington, DC, for appellee. **ON BRIEF:** F. William Brownell, Kevin L. Fast, Kimberly A. Newman, Ross S. Antonson, Hunton & Williams, Washington, DC, for appellant. Kenneth E. Melson, U.S. Atty., Theresa Carroll Buchanan, Asst. U.S. Atty., Alan D. Margolis, Office of General Counsel, Environmental Protection Agency, Washington, DC, for appellee.

Before MURNAGHAN and NIEMEYER, Circuit Judges, and YOUNG, Senior United States District Judge for the District of Maryland, sitting by designation.

Vacated and remanded by published opinion. Judge NIEMEYER wrote the opinion, in which Judge MURNAGHAN and Senior Judge YOUNG joined.

**OPINION**

NIEMEYER, Circuit Judge:

After the Environmental Protection Agency ("EPA") denied the application of Ethyl Corporation for a waiver of approval for a gasoline additive, Ethyl filed this action under the Freedom of Information Act to compel the production of records from the EPA relevant to the EPA's denial of the waiver application. In its complaint, Ethyl contended that the EPA did not conduct an adequate search for the documents requested and that other documents were discovered and improperly withheld. Ethyl also requested discovery on these issues. The district court granted the EPA's motion for summary judgment, finding that Ethyl "failed to make a sufficient showing on an essential element of the case on which that party has the burden of proof." The court concluded: (1) the EPA's efforts in searching for information were adequate and no factual dispute was shown to exist; (2) the EPA's decision to withhold certain documents on the ground that they fell within the "deliberative process" privilege and the decision not to produce or describe other documents on the ground that they constituted personal, not agency, documents were proper as a matter of law; and (3) no discovery or *in camera* inspection was necessary to dispose of the case properly.

Because we conclude that factual questions remained on issues on which the EPA had the burden of proof, we vacate the judgment and remand the case for further proceedings.

I

In May 1990, Ethyl initiated an administrative proceeding before the EPA pursuant to § 211(f)(4) of the Clean Air Act, 42 U.S.C. § 7545(f)(4), seeking the EPA's approval of high-performance gasoline additive known as HiTEC 3000 (methylcyclopentadienyl manganese tricarbonyl). Section 211 prohibits use of a fuel additive until the manufacturer demonstrates that the additive will not interfere with the proper operation of any emission device or system. Pending completion of that proceeding, which Ethyl expects will be protracted, Ethyl requested a "fuel additive waiver" based on its own extensive and successful testing of HiTEC 3000. The EPA denied the application for a waiver on January 8, 1992, and on appeal, the issue was remanded to the EPA for further proceedings. *Ethyl Corp. v. Browner,* 989 F.2d 522 (D.C.Cir.1993).

On January 10, 1992 Ethyl submitted a request under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, for EPA documents relating to the denial of Ethyl's waiver application, including "communications between the EPA and representatives of the automobile manufacturing industry" and portions of telephone logs and calendars reflecting such communications. In response to Ethyl's request, the EPA provided approximately 450 documents and identified 243 more which it declined to disclose on the grounds that the documents were used internally in the agency's deliberative process and were protected by the attorney-client and attorney work-product privileges. The EPA therefore took the position that these documents were exempt from disclosure under Exemption 5 of the FOIA, 5 U.S.C. § 552(b)(5). The EPA further noted that it was withholding an undisclosed number of documents that its employees had characterized as "personal." It did not identify those documents except to note that they consisted of calendars, telephone logs, and personal notes from telephone conversations and meetings.

When Ethyl moved to supplement the administrative record of its waiver application to include documents produced by the EPA, the EPA conducted a further review of the documents it had withheld and, concluding that 12 of them had been improperly withheld, provided them to Ethyl. With respect to the remaining withheld documents, Ethyl then filed an administrative appeal of its FOIA request. When the EPA failed to respond, Ethyl filed this action in August 1992, seeking a court order compelling the EPA to disclose the remaining documents it had identified as responsive but exempt from mandatory disclosure along with documents identified as personal.

Along with its complaint, Ethyl filed a motion to compel the production of a *Vaughn* index [1] and served a set of interrogatories and requests for the production of documents. The EPA opposed Ethyl's discovery requests and took the position that it was not obliged to produce the *Vaughn* index until it filed a motion for summary judgment.

Although the district court stayed discovery until it could consider the EPA's motion for summary judgment, it entered an order directing the EPA to produce a *Vaughn* index. The order required the EPA to provide with respect to each withheld document: (1) its date; (2) its author and each recipient; (3) a description of its contents; (4) the reason for withholding its production, stated with sufficient specificity "to allow the court to determine whether the document has been properly withheld"; (5) any public interest determination made by the EPA concerning such withholding; and (6) "an identification of any reasonably segregable portions of a withheld document that may be disclosed to Ethyl, with a statement of all reasons for withholding the remainder of the document." Although the EPA filed a *Vaughn* index with the district court, it failed to provide most of the information required by the district court's order. Nevertheless, two days after producing the *Vaughn* index, the EPA determined that 79 more withheld documents could be released, and it provided them to Ethyl.

In February 1993, the EPA filed a motion for summary judgment relying on affidavits of David Kortum, the EPA official assigned the task of collecting the documents, and Mary Smith, the Director of the Field Operations and Support Division of the EPA's Office of Mobile Sources. The Smith affidavit revealed that five previously unidentified documents had been added to the *Vaughn* list and that another, which had been identified and withheld, was being produced. Ethyl states that on another occasion the EPA released three more documents. It contends that as of this time the number of documents being withheld totals 146.[2]

---

1. As discussed below, the *Vaughn* index is a list which describes each document withheld by an agency with sufficiently detailed information to enable a district court to rule whether it falls within an exemption provided by FOIA. It is called a *Vaughn* index by reason of the decision in which the use of the index was first discussed,

*Vaughn v. Rosen,* 484 F.2d 820 (D.C.Cir.1973), cert. denied, 415 U.S. 977, 94 S.Ct. 1564, 39 L.Ed.2d 873 (1974).

2. While we cannot independently determine this number through the factual history given, the

The district court granted the EPA's motion for summary judgment on April 19, 1993, ruling that "the non-moving party [Ethyl] has failed to make a sufficient showing on an essential element of the case on which the party has the burden of proof." The court concluded that, based on the affidavits presented, the EPA had conducted "an adequate and thorough search" for responsive documents, and that Ethyl had failed to contradict the EPA's assertions in that regard. The court concluded that the only undisclosed documents were those listed on the EPA's *Vaughn* index, and based on information in the index, it concluded that the disputed documents were protected by the agency's "deliberative process privilege for pre-decisional and deliberative documents and that further disclosure would harm the public interest." The court also concluded that any purely factual materials in the withheld documents were not "reasonably segregable from the deliberative context of the documents." The court's findings were made on the basis of the *Vaughn* index and without the benefit of any *in camera* review.

Following the district court's ruling, Ethyl made a second FOIA request in July 1993, seeking further documents relating to the EPA's denial of its application for a gasoline additive waiver. In its second request, Ethyl asked the EPA to omit from its response any documents which had previously been produced in response to the first FOIA request. The EPA provided further documents in response to the second request, some previously produced, explaining that the agency had kept no record of which documents it had produced in response to the first FOIA request. Ethyl asserts that 17 documents produced in response to the second request were also responsive to the first request, and cites this fact as relevant to its contention that the EPA improperly withheld documents on the first request. It is unclear whether any of the 17 documents in question were listed on the *Vaughn* index of withheld documents that are the subject of this action.

## II

■■■ The Freedom of Information Act was enacted to maintain an open government

and to ensure the existence of an informed citizenry "to check against corruption and to hold the governors accountable to the governed." *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 242, 98 S.Ct. 2311, 2327, 57 L.Ed.2d 159 (1978). While an efficient and effective democratic government is one that is open to the people and accountable to them, the people's access must be orderly and not so unconstrained as to disrupt the government's daily business. Although the Act recognizes these principles, it nevertheless is to be construed broadly to provide information to the public in accordance with its purposes; for the same reason, the exemptions from production are to be construed narrowly. *See United States Dep't of Justice v. Julian*, 486 U.S. 1, 8, 108 S.Ct. 1606, 1611, 100 L.Ed.2d 1 (1988). Moreover, Congress explicitly provided that the agency called upon to provide documents bears the burden of demonstrating that any document withheld falls within a stated exemption. *See* 5 U.S.C. § 552(a)(4)(B) ("the burden is on the Agency to sustain its action [of withholding a record under a stated exemption]").

The FOIA requires each governmental agency to provide information to the public on request if the request "reasonably describes" the record sought and is made in accordance with published agency rules for making requests. 5 U.S.C. § 552(a)(3). The agency is required to provide a response within 10 days of the receipt of the request on whether it will provide the information. 5 U.S.C. § 552(a)(6). Subsection 552(b) enumerates nine exemptions from the production requirement, but these exemptions apply to categories of *information*, and are not defined so as to protect entire documents, *per se*. *See Virginia Beach v. U.S. Dep't of Commerce*, 995 F.2d 1247, 1253 (4th Cir. 1993). Thus, the Act provides:

> Any reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt from this subsection [ (b) ].

5 U.S.C. § 552(b). The United States District Courts are given jurisdiction to enjoin

146 number of withheld documents is not disputed.

the Agencies from "withholding Agency records and to order the production of any Agency records improperly withheld." 5 U.S.C. § 552(a)(4)(B).

■ On review of a district court's granting of summary judgment to the government in a FOIA action, we "must determine *de novo* whether, after taking all the evidence in the light most favorable to the non-movant, there remains no genuine issue of material fact and the government is entitled to judgment as a matter of law." *Virginia Beach,* 995 F.2d at 1252 (*citing Pulliam Invest. Co. v. Cameo Properties,* 810 F.2d, 1282, 1286 (4th Cir.1987)). Although any factual conclusions that place a document within a stated exemption of FOIA are reviewed under a clearly erroneous standard, "the question of whether a document fits within one of *FOIA*'s prescribed exemptions is one of law, upon which the district court is entitled to no deference." *Id.* at 1252 n. 12.

## III

■ Ethyl Corporation first contends that the EPA's search for the requested documents failed to meet articulated standards of thoroughness. To buttress this allegation, Ethyl points to the fact that on each occasion the EPA was forced, either by court order or by the necessity of responding to a development in the litigation, to review withheld documents, it found that it had erroneously withheld documents subject to disclosure and consequently released such documents. It states that the EPA once had to amend the *Vaughn* list, and on another occasion, in response to the second FOIA request, it produced documents that were earlier requested but neither produced nor identified on the *Vaughn* list.

Ethyl also notes that in the EPA's first affidavit, David Kortum, who executed the affidavit on behalf of the EPA, stated that he contacted 25 individuals from eight separate EPA offices to obtain documents. When Ethyl provided a counter-affidavit that showed that more than 100 persons appeared to have participated in the review of Ethyl's waiver application, Kortum submitted a follow-up affidavit in which he indicated that he had communicated with 59 persons. Ethyl points out that the EPA did not, however, dispute the fact that more than 100 persons were involved, and it did not provide an explanation for why the remainder of the persons involved were not contacted for documents.

Finally, Ethyl contends that inadequate criteria were provided to EPA employees on how to differentiate between documents which are personal and those which belong to the agency and are theoretically subject to the FOIA. Ethyl observes that even though David Kortum was aware of the 10 factors contained in the EPA's *FOIA Manual* for distinguishing personal records from agency records, when he instructed EPA employees about Ethyl's request, he mentioned only 4 of the 10 factors, thus permitting employees to characterize as personal some documents which actually might be covered by the FOIA. As a consequence, Ethyl argues, when the EPA stated, "Certain documents requested by you are personal records, not agency documents, and thus, are not covered by FOIA," it may have excluded agency documents which should have been produced. The EPA described these personal documents generally as calendars, telephone logs, and notes of telephone conversations and meetings.

In response to Ethyl's arguments, the EPA asserts that its several affidavits show that its search for documents was thorough and adequate and that an effort of that quality is all that is required by law.

■ In judging the adequacy of an agency search for documents the relevant question is not whether every single potentially responsive document has been unearthed, *see, e.g., Perry v. Block,* 684 F.2d 121, 128 (D.C.Cir.1982), but whether the agency has "demonstrated that it has conducted a 'search reasonably calculated to uncover all relevant documents.'" *Weisberg v. United States Dep't of Justice,* 745 F.2d 1476, 1485 (D.C.Cir.1984) (*quoting Weisberg v. United States Dep't of Justice,* 705 F.2d 1344, 1350–51 (D.C.Cir.1983)). In demonstrating the adequacy of its search, however, an agency may not rest on an affidavit that simply avers that the search was conducted in a

manner "consistent with customary practice and established procedure." Rather, the affidavit must be reasonably detailed, "setting forth the search terms and the type of search performed, and averring that all files likely to contain responsive materials (if such records exist) were searched" so as to give the requesting party an opportunity to challenge the adequacy of the search. *Oglesby v. United States Dep't of Army,* 920 F.2d 57, 68 (D.C.Cir.1990).

■■■ In this case, a sufficient question has been raised about the EPA's methodology that we conclude that it was error to have ruled, as a matter of law, that the EPA met its burden of proof. First, on the question of whether a proper search was conducted of employees, we note that the employees were not properly instructed on how to distinguish personal records from agency records. An agency presented with a request for records under FOIA is required to produce only agency records, which are those that are either created or obtained by the agency and are subject to the control of the agency at the time the FOIA request is made. *See United States Dep't of Justice v. Tax Analysts,* 492 U.S. 136, 144–45, 109 S.Ct. 2841, 2847–48, 106 L.Ed.2d 112 (1989). And per-

sonal records of an agency employee are not agency records and are not subject to the FOIA. The distinction, however, is more easily stated than applied. Not only is there difficulty in making the distinction between a personal record and an agency record, particularly when the record may not be required by agency procedure but is generated by the employee in the course of his work, but there is yet a more difficult problem in requiring employees in the first place *to identify* the existence of personal records. An agency cannot require an employee to produce and submit for review a purely personal document when responding to a FOIA request. On the other hand, it does control the employee to the extent that the employee works for the agency on agency matters. To clarify the distinction, the EPA published, in its *FOIA Manual,* 10 factors to be considered in determining whether a document is a personal or agency record, instructing that "employees should review each document in the context of *all these criteria*" (emphasis added).[3] Even though the EPA Manual directs that all 10 factors should be considered in determining whether a record is an agency or personal record, Kortum's affidavit indi-

---

**3.** The language of EPA's *FOIA Manual* on this subject is as follows:

g. **Personal records of Employees**. The Freedom of Information Act only applies to Agency records, not to the personal records of individual Agency employees. If personal records are responsive to a FOIA request, the Agency should notify the requester that the personal records exist but are not covered by FOIA since they are not Agency records, and accordingly are not being provided.

1) *"Personal Record" Considerations.* In determining whether documents are personal records, the Department of Justice suggests that the following criteria be considered. These considerations are closely related and in some instances overlap. Employees should review each document in the context of all these criteria.

● *Creation*—Was the document created by an Agency employee on Agency time, with Agency materials, at Agency expense? If not, then it probably is not an Agency document on that basis alone.

● *Content*—Does the document contain substantive information? If not, then it probably is not an Agency record, on that basis alone.

● *Purpose*—Was the document created solely for an individual's personal convenience? Al-

ternatively, to what extent was it created to facilitate Agency business?

● *Distribution*—Was the document distributed to anyone else for any reason, such as for a business purpose? How wide was the circulation?

● *Use*—To what extent did the document's author actually use it to conduct Agency business? Did others use it?

● *Maintenance*—Was the document kept in the author's possession, or was it placed in an official Agency file?

● *Disposition*—Was the document's author free to dispose of it at his or her personal discretion? What was the actual disposal practice?

● *Control*—Has the Agency attempted to exercise control over the document by requiring that it be retained on file for a specified time? Did it do so by requiring the document be created in the first place? If so, such records are always Agency records.

● *Segregability*—Is there any practical way to segregate any personal information in the document from official business information?

● *Revision*—Was the document revised or updated after the fact for recordkeeping purposes?

cates that he advised the employees to whom he spoke of only 4 of the factors.

An unresolved question is also created by Ethyl's statement, under oath, that over 100 employees were involved in considering and deciding the waiver application and by Kortum's affidavit which indicates that only 59 were actually contacted. Leaving unaddressed so large a group creates at least a question of fact as to whether the EPA met its burden of conducting a "search reasonably calculated to uncover all relevant documents."

Finally, the fact that 17 documents, responsive to the first request although not identified in response to that request, were supplied in response to a second FOIA request puts the adequacy of the search in connection with the first FOIA request in doubt.

■ For all of these reasons, we are not satisfied that the EPA met its burden of showing that it conducted an adequate search. "The burden is on the agency to demonstrate, not the requestor to disprove, that the materials sought, are not 'agency records.'" *Tax Analysts*, 492 U.S. at 142 n. 3, 109 S.Ct. at 2847 n. 3. At the least, a question of fact on the issue remains, precluding summary judgment for the EPA on this issue.

## IV

■ The EPA claims that all of the 146 documents identified on the *Vaughn* list are subject to withholding on the basis of Exemption 5 of the FOIA, exempting from production records that are "inter-agency or intra-agency memorandums or letters · which would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). Although some of these records were withheld on the basis of attorney-client and attorney work-product privileges, all of them were withheld on the basis of a privilege asserted to protect the EPA's deliberative processes, known as the "deliberative process" privilege. Ethyl does not contest the application of Exemption 5 to the attorney-client and attorney work-product documents. It does, however,

challenge the EPA's assertion of the deliberative process privilege.

Defining the contours of the deliberative process privilege, the Supreme Court stated in *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 95 S.Ct. 1504, 44 L.Ed.2d 29 (1975), "The cases uniformly rest the privilege on the policy of protecting the 'decisionmaking processes of government agencies,'; and focus on documents 'reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated.'" *Id.* at 150, 95 S.Ct. at 1516 (citations omitted). Relying on the legislative history of the FOIA, the Court explained, "[t]he point ... is that the 'frank discussion of legal or policy matters' in writing might be inhibited if the discussion were made public; and that the 'decisions' and 'policies formulated' would be the poorer as a result." *Id.* (citations omitted).

■ In addition to being *deliberative*, a record protected by the deliberative process privilege must also be *predecisional*, i.e. "prepared in order to assist an agency decisionmaker in arriving at his decision." *Renegotiation Board v. Grumman Aircraft Engineering Corp.*, 421 U.S. 168, 184, 95 S.Ct. 1491, 1500, 44 L.Ed.2d 57 (1975). Stated differently, the privilege protects "recommendations, draft documents, proposals, suggestions, and other subjective documents which reflect the personal opinions of the writer rather than the policy of the agency." *Coastal States Gas Corp. v. Department of Energy*, 617 F.2d 854, 866 (D.C.Cir.1980). The deliberative process privilege, as with all of the exemptions contained in § 522(b), is to be construed narrowly, and the burden rests upon the government to be precise and conservative in its privilege claims. Thus, the privilege does not protect a document which is merely peripheral to actual policy formation; the record must bear on the formulation or exercise of policy-oriented judgment.

To fall within the deliberative process privilege, materials must bear on the formulation or exercise of agency policy-oriented *judgment*. The deliberative process privilege, we underscore, is essentially concerned with protecting the process by

which policy is formulated....[W]hen material could not reasonably be said to reveal an agency's or official's mode of formulating or exercising policy-implicating judgment, the deliberative process privilege is inapplicable. *See Playboy Enterprises v. Dep't of Justice,* 677 F.2d 931, 935 (D.C.Cir.1982) (holding that fact report was not within privilege because compilers' mission was simply "to investigate the facts," and because report was not "intertwined with the policy-making process.") (quoting district court).

*Petroleum Info. Corp. v. United States Dep't of Interior,* 976 F.2d 1429, 1435 (D.C.Cir. 1992) (internal citations omitted) (emphasis in the original).

 One relevant factor to be considered in determining whether the deliberative process privilege applies to a record is the identity and position of the author and any recipients of the document, along with the place of those persons within the decisional hierarchy. *See Access Reports v. United States Dep't of Justice,* 926 F.2d 1192, 1195 (D.C.Cir.1991).

In the case before us, the *Vaughn* index articulates the Exemption 5 privilege in general terms, using FOIA language, and couples the statement of privilege for each document with a general description of the document. With respect to most of the documents listed on the index, neither the author nor the recipient of the document is identified. From this level of identification, it appears that many documents are no more than summaries or graphical representations of purely statistical data. Some are notes discussing contacts that EPA officials have had with other government agencies regarding Ethyl's waiver application. While most of the descriptions provided in the index are inadequate to determine whether the identified document is properly excluded by the deliberative process privilege, some that are adequate do not meet the applicable criteria for properly asserting the privilege.

The *Vaughn* index is a surrogate for the production of documents for *in camera* review, designed to enable the district court to rule on a privilege without having to review the document itself. It was developed in response to the Supreme Court's decision in *EPA v. Mink,* 410 U.S. 73, 93 S.Ct. 827, 35 L.Ed.2d 119 (1973), where the Court reversed a circuit ruling that would have mandated an *in camera* review by the district court of all documents withheld by the government in response to a FOIA request. Rather than impose such a rigid requirement, the Supreme Court introduced flexibility into the process. Appreciating the potential damage that disclosure, even to the district court, might have on the deliberative process of an agency, the Court observed that a review of the agency's decision to withhold a document does not automatically require an *in camera* inspection. The Court explained:

> Plainly, in some situations, *in camera* inspection will be necessary and appropriate. But it need not be automatic. *An agency should be given the opportunity, by means of detailed affidavits or oral testimony,* to establish to the satisfaction of the District Court that the documents sought fall clearly beyond the range of material that would be available to a private party in litigation with the agency. The burden is, of course, on the agency resisting disclosure, 5 U.S.C. § 552(a)(3), and if it fails to meet its burden without *in camera* inspection, the District Court may order such inspection.

*Id.* at 93, 93 S.Ct. at 839 (emphasis added).

Defining a mechanism to take advantage of the flexibility allowed by *Mink,* the court in *Vaughn v. Rosen,* 484 F.2d 820 (D.C.Cir. 1973), *cert. denied,* 415 U.S. 977, 94 S.Ct. 1564, 39 L.Ed.2d 873 (1974), also recognized the pragmatic problem created by the unique dilemma inherent in, and one-sided nature of, a FOIA production. The producing party is saddled with the burden of demonstrating confidentiality without breaching the confidence, and it must carry this burden against the requesting party who lacks knowledge and therefore is helpless as an adversary.

> This lack of knowledge of the party seeking disclosure seriously distorts the traditional adversary nature of our legal system's form of dispute resolution.... In a case arising under the FOIA ... the typical process of dispute resolution is impossible.

484 F.2d. at 824–25. While an *in camera* review was recognized to be available as a possible method of reviewing an agency decision, the court also recognized that such a process can be cumbersome and overburdening for the judiciary. The court in *Vaughn* thus directed that the government provide a detailed justification for its exemption and index the documents against the justification, fragmenting the documents into segregable parts. The court emphasized a need for specificity and itemization to permit the adversary process to function. If the index is so vague as to leave the district court with an inability to rule, then some other means of review must be undertaken, such as *in camera* review.

A review of EPA's *Vaughn* index in this case leaves the court without the ability to determine whether many of the documents fall within the claimed privilege, and absent sufficient information, the EPA fails to carry its burden of satisfying the requirements of demonstrating an exemption. Summaries and charts depicting the results of testing conducted by the agency would appear, without a more detailed explanation, not to have any deliberative character. But, most importantly, where the list fails to identify either the author or its recipient, those persons' relationships to the decisionmaking process cannot be identified and it becomes difficult, if not impossible, to perceive how the disclosure of such documents would result in a chilling effect upon the open and frank exchange of opinions within the agency. In short, little information is provided by much of the *Vaughn* index for testing the EPA's deliberative process privilege claims, leaving the district court and us entirely dependent upon the EPA's own assertions that the release of the documents in question would "significantly curtail ... the expression of such opinions, analyses, and recommendations in future deliberations."

The FOIA also provides that any agency may rely on an exemption only as to segregable portions of records, so that the agency must produce any "reasonably segregable portion of a record" that does not fall within an exemption. *See* 5 U.S.C. § 552(b). Thus, the statute requires partial disclosure of records "reflecting deliberative or policy making processes on the one hand, and purely factual, investigative matters on the other." *Mink*, 410 U.S. at 89, 93 S.Ct. at 837. And the EPA, in this case, has the burden of showing that no segregable information exists. *See Army Times Publishing Co. v. Dep't of Air Force*, 998 F.2d 1067, 1071 (D.C.Cir.1993). We cannot determine from looking at the index whether it has attempted to meet this additional burden.

## V

With respect to both the question of whether the EPA conducted an adequate search for records and the question of whether it justifiably has withheld 146 documents, the district court seems to have placed the burden of proof on Ethyl, contrary to the terms of the FOIA. Ethyl has raised significant factual questions, particularly in light of the fact that it does not have the benefit of any knowledge about the documents in question. The district court should have placed the burden on the EPA, conscious of the knowledge that "the plaintiff is at a distinct disadvantage in attempting to test the claims alleged by [the withholding agency]." *Exxon Corp. v. FTC*, 663 F.2d 120, 126 (D.C.Cir. 1980). Because we conclude that open questions remain that cannot be disposed of on the present record by summary judgment, we vacate the summary judgment entered for the EPA and remand this case for further proceedings. The EPA has argued that if it is required to describe in more detail the documents it has withheld, then the confidentiality of the documents will be breached. If the district court is satisfied that the EPA cannot describe documents in more detail without breaching a properly asserted confidentiality, then the court is still left with the mechanism provided by the statute—to conduct an *in camera* review of the documents. *See* 5 U.S.C. § 522(a)(4)(B).

*VACATED AND REMANDED FOR FURTHER PROCEEDINGS.*