WICKWIRE GAVIN, P.C. Plaintiff,

v.

DEFENSE INTELLIGENCE AGENCY, Defendant.

No. 1:04CV37 (JCC).

United States District Court, E.D. Virginia, Alexandria Division.

July 26, 2004.

Brian Paul Waagner, Wickwire Gavin PC, Vienna, VA, for Plaintiff.

Gerard J. Mene, United States Attorney's Office, Alexandria, for Defendant.

## MEMORANDUM OPINION

CACHERIS, Senior District Judge.

This matter comes before the Court on Defendant's Motion for Summary Judgment. For the reasons stated below, the Court will grant DIA's motion only as to those documents listed in the *Vaughn* Index claiming FOIA Exemption Three (redactions of the names of DIA personnel) and FOIA Exemption 5. In all other respects the Court will deny the Defendant's motion.

## I. Background

By letter dated October 30, 2003, Wickwire Gavin, P.C. ("WG"), a professional corporation and law firm, submitted a request under the Freedom of Information Act (5 U.S.C. § 552) ("FOIA") for a copy of "all contracts awarded by the Department of Defense, or any component thereof, to Blane International Group, Inc. of Roswell, Georgia or to Milton C. Blane, including but limited to Contract No. MDA908–99–C–002." (Amend.Compl.¶ 5.) ("Request I") The DIA is a Department of Defense combat support agency and part of the United State's Intelligence Community. The DIA is the primary producer of foreign military intelligence serving all of the branches of the United States military.

Plaintiff filed a second FOIA request on November 12, 2003, seeking "the contract files for Contract No. MDA908–99–C–002, which WG believes to be a contract between the Department of Defense or one of its components, and Blane International Group, Inc." (Amend. Compl. ¶ 6 ("Request II").)

Plaintiff filed this lawsuit on January 13, 2004 to obtain the release of records sought in Request I and Request II. By letter of February 12, 2004, the DIA produced documents responsive to Request I. (Def.Ex. C.) The DIA released 16 documents, with redactions, consisting of the contract and modifications to the contract. Redactions were made pursuant to FOIA exemptions (b)(2) (information pertaining to internal rules and practices of the agency), (b)(3) (information specifically exempt by statute), and 10 U.S.C. § 424. (Def.Ex. C.)

On March 3, 2004, WG amended its complaint, asserting that all materials should

have been released and that no documents or portions thereof were subject to any exemption under the FOIA.

On March 30, 2004, the DIA released further documents and informed WG of the existence of 156 documents from the contract file (responsive to Request II), and one document of the Department of Defense, but stated that the documents were exempt under FOIA exceptions (b)(1) (classified information) and (b)(4) (trade secrets or commercial and financial information obtained from a person on a privilege or confidential basis). (Def.Ex. E.)

On May 13, 2004 and after requests by WG, the DIA agreed to provide a *Vaughn* Index[1] by May 19, 2004. On May 20, 2004, DIA informed WG that it had located 163 documents and was releasing 120 of them in whole or in part. (Def.Ex. F.) The DIA also provided WG with a *Vaughn* index. On June 18, 2004, the DIA released additional documents and a corrected *Vaughn* Index. (*See* Def. Ex. H.)

The documents in this case fall into one of the five following categories:

| Type | Doc. Nos. (as numbered in the Vaughn Index) |
| --- | --- |
| Released in its entirety (25 Documents) | 1, 7, 8, 24, 27, 36, 37, 87, 102, 103, 107–110, 113, 116, 118, 122–126, 148, 160, 163 |
| Released, but with DIA personnel names redacted (96 Documents) | 2–6, 9, 11, 12, 14–23, 26–28, 31–35, 38–42, 44–46, 51, 52, 57–59, 63, 69, 70, 73–77, 81–86, 89–94, 96–101, 104–106, 112, 114, 115, 117, 119–121, 127, 130, 132, 135, 141–143, 147, 150–159 |
| Not released or released in part as "classified." (40 Documents) | 10, 13, 29, 47–50, 53–56, 60, 61, 64, 65, 67, 68, 71, 72, 78, 79, 80, 88, 95, 128, 129, 131, 133, 134, 136–140, 144–146, 149, 161, 162 |
| Not released as subject to attorney-client privilege (2 Documents) | 25, 111 |
| Not released as being an inter-agency memorandum or letter referred by the agency to the Department of Defense for release determination | 43 |

## II. Standard of Review

Summary judgment is appropriate only if the record shows that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *see also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Evans v. Technologies Applications & Serv., Co.,* 80 F.3d 954, 958–59 (4th Cir.1996) (citations omitted). In reviewing the record on summary judgment, "the court must draw any inferences in the light most favorable to the nonmovant" and "determine whether the record taken as a whole could lead a reasonable trier of fact to find for the nonmovant." *Brock v. Entre Computer Ctrs.,* 933 F.2d 1253, 1259 (4th Cir.1991) (citations omitted).

The very existence of a scintilla of evidence or of unsubstantiated conclusory allegations, however, is insufficient to avoid summary judgment. *Anderson,* 477 U.S.

---

1. *"Vaughn* Index" is a term derived from *Vaughn v. Rosen,* 484 F.2d 820 (1973). The "Index" usually consists of a detailed affidavit, the purpose of which is to "permit the court system effectively and efficiently to evaluate the factual nature of disputed information." *John Doe Agency v. John Doe Corp.,* 493 U.S. 146, 149, 110 S.Ct. 471, 107 L.Ed.2d 462 (1989). It is similar to a privilege log often found in civil litigation.

at 248–52, 106 S.Ct. 2505. Rather, the Court must determine whether the record as a whole could lead a reasonable trier of fact to find for the non-movant. *Id.* at 248, 106 S.Ct. 2505.

## III. Analysis

 As the Fourth Circuit has noted, "FOIA was enacted as a general disclosure statute pertaining to all federal records." *Bowers v. United States Dep't of Justice,* 930 F.2d 350, 353 (4th Cir.1991). However, "Congress 'realized that legitimate governmental and private interests could be harmed by release of certain types of information.'" *Id.* at 353–54 (quoting *FBI v. Abramson,* 456 U.S. 615, 621, 102 S.Ct. 2054, 72 L.Ed.2d 376 (1982)); *see also Critical Mass Energy Project v. Nuclear Regulatory Comm'n,* 975 F.2d 871, 872 (D.C.Cir.1992) (*en banc*) (same). It therefore created certain exemptions to disclosure under FOIA, but nevertheless required that such exemptions "be narrowly construed in favor of disclosure." *Bowers,* 930 F.2d at 354. FOIA places the burden on the government agency to sustain its action to withhold information under any of the FOIA Exemptions. *Wickwire Gavin, P.C. v. United States Postal Service,* 356 F.3d 588, 591 (4th Cir.2004).

 Once a requestor of information files a judicial challenge to an agency's denial of its FOIA request, "a district court must make a *de novo* determination of whether government records were properly withheld under an FOIA exemption provision." *Willard v. Internal Revenue Serv.,* 776 F.2d 100, 102 (4th Cir.1985). Whether a given document properly falls within the scope of one of the statutory exemptions is a question of law. *Ethyl Corp. v. United States Envtl. Prot. Agency,* 25 F.3d 1241, 1246 (4th Cir.1994).

 A district court, in making its determination, should provide the agency's opinions "no more weight than those of any other litigant in an adversarial contest before a court." *Mead Data Cent., Inc. v. United States Dep't of the Air Force,* 566 F.2d 242, 251 (D.C.Cir.1977). Furthermore, "[i]nformation in the government's possession when requested by anyone for any reason is presumptively producible unless it is clearly exempt." *Martin Marietta Corp. v. Dalton,* 974 F.Supp. 37, 40 (D.D.C.1997), and "[t]he agency refusing to release the information bears the burden of proving that its actions were correct." *Willard,* 776 F.2d at 102. In conducting its analysis, the Court may examine the documents at issue *in camera* in order to determine whether they have been properly withheld under the relevant exceptions to FOIA. 5 U.S.C. § 552(a)(4)(B).

### A. Adequacy of the DIA's Search

 In order to prevail on its motion for summary judgment, the DIA must establish that it performed a proper search for documents responsive to plaintiff's requests. The agency is under a duty to conduct a "reasonable" search for responsive records using methods which can be reasonably expected to produce the information requested to the extent they exist. *See SafeCard Servs. Inc. v. SEC,* 926 F.2d 1197, 1201 (D.C.Cir.1991); *Oglesby v. United States Dept. of the Army,* 920 F.2d 57, 68 (D.C.Cir.1990).

 In judging the adequacy of an agency search for documents, the relevant question is not whether every single potentially responsive document has been unearthed, but whether the agency has "demonstrated that it has conducted a 'search reasonably calculated to uncover all relevant documents.'" *Ethyl Corp.,* 25 F.3d at 1246 (4th Cir.1994) (quoting *Weisberg v. United States Dep't of Justice,* 705 F.2d 1344, 1350–51 (D.C.Cir.1983)). In demonstrating the adequacy of its search, however, an agency may not rest on an affidavit that simply avers that the search

was conducted in a manner "consistent with customary practice and established procedure." *Ethyl Corp.*, 25 F.3d at 1247. Rather, the affidavit must be reasonably detailed, "setting forth the search terms and the type of search performed, and averring that all files likely to contain responsive materials (if such records exist) were searched" so as to give the requesting party an opportunity to challenge the adequacy of the search. *Id.; Oglesby v. United States Dep't of Army,* 920 F.2d 57, 68 (D.C.Cir.1990). The government may rely upon affidavits to show it has conducted a reasonable search as long as they are "relatively detailed and nonconclusory and ... submitted in good faith." *Marriott Employees' Federal Credit Union v. National Credit Union Admin,* No. Civ. A. 96–478–A, 1996 WL 33497625, at *8 (E.D.Va.1996) (citing *Weisberg,* 705 F.2d at 1351).

■ To meet its burden, the DIA offers the declaration of Robert P. Richardson, Chief of the FOIA Staff at the DIA. Richardson stated the following with regards to the agency's search for documents:

> Through the exercise of my official duties, I have become familiar with plaintiff's FOIA request .... Upon receipt of the FOIA request, I caused the Office for Procurement to conduct a comprehensive search for records responsive to plaintiff's requests as this office would have the most complete data indexed to the subject of the requests. The responsive documents were then placed in the FOIA/Privacy Act queue for subsequent processing for release, as is the normal practice.
>
> . . . .
>
> By letter dated 20 May 2004, plaintiff was advised that an additional search of DIA systems of records resulted in the agency locating a total of 162(sic) documents responsive to plaintiff's FOIA re-

quests, the entire content of the agency contract file.

(Def. Ex. J. at ¶ 4, 5, 8.) The DIA contends that this declaration "demonstrates that the DIA has searched for responsive contract documents from the Office of Procurement, which is the office responsible for DIA government contracts." (Def. Mem. at 10.) On the basis of this declaration, the DIA asks the Court to conclude that "the search performed was thorough and reasonable." *Id.*

WG argues that the DIA has not met its burden to demonstrate that the search was reasonable. WG contends that Richardson's declaration regarding the search for documents is hearsay, insufficiently detailed, and conclusory.

In a similar case, the Court of Appeals for the District of Columbia reversed a district court's grant of summary judgment based on an insufficient affidavit by the agency-defendant. In *Oglesby,* a freelance writer appealed the dismissal of his FOIA action against multiple federal agencies. 920 F.2d at 60. The court of appeals reversed the district court's grant of summary judgment, because there were material facts in dispute regarding the Department of State's search for documents. *Id.* at 68. The affidavit submitted by the Department of State stated only "that '[b]ased upon the information contained in Mr. Oglesby's letter, and consistent with customary practice and established procedure, a search was initiated of the Department record system most likely to contain the information which had been requested for the time period 1954–1956, namely, the Central Records.'" *Id.* The court of appeals held that the Department of State's affidavit failed to "show, with reasonable detail, that the search method, namely searching the Central Records, was reasonably calculated to uncover all relevant documents." *Id.* Moreover, the affidavit

did not "identify the terms searched or explain how the search was conducted." *Id.* The Court reasoned that:

A reasonably detailed affidavit, setting forth the search terms and the type of search performed, and averring that all files likely to contain responsive materials (if such records exist) were searched, is necessary to afford a FOIA requester an opportunity to challenge the adequacy of the search and to allow the district court to determine if the search was adequate in order to grant summary judgment.

*Id.* Affidavits in support of a summary judgment motion in a FOIA case must provide sufficient detail regarding the search for documents to allow the district court to determine if the search was adequate.

Richardson's affidavit contains sufficient personal knowledge. In a FOIA case, an affidavit from the official who coordinated the search is sufficient. *See Carney v. United States Dept. of Justice,* 19 F.3d 807, 814 (2d Cir.1994) ("An affidavit from an agency employee responsible for supervising a FOIA search is all that is needed to satisfy Rule 56(e); there is no need for the agency to supply affidavits from each individual who participated in the actual search.").

While Richardson's declaration shows sufficient "personal knowledge," the details of the search are inappropriately vague and conclusory. He states that he ordered his office to conduct "a comprehensive search." (Def. Ex. J ¶ 5.) This "comprehensive" search initially only produced a copy of the contract between DIA and Blane. An additional search revealed 163 documents considerably more than the prior "comprehensive search." Apparently the initial search was less than "comprehensive."

Like the affidavit in *Oglesby,* Richardson's declaration is conclusory. It asks the Court to trust the declarant that the search was "comprehensive" and that the practices of the department are sufficient. This inference is not only incompatible with the agency's burden in this case, but also with the burden on the party moving for summary judgment. *See Ethyl Corp.,* 25 F.3d at 1246–47 ("an agency may not rest on an affidavit that simply avers that the search was conducted in a manner 'consistent with customary practice and established procedure.' "). The declaration fails to describe either search in detail, failing to detail who conducted the search, which file "systems" were searched, the search terms used, or how long the searches took to perform. Accordingly, the Court finds that the DIA has not offered sufficient evidence to show a lack of a genuine issue of material fact, specifically the adequacy of its search.

## B. FOIA Exemption One

■ Although the DIA has not carried its burden on summary judgment to show the adequacy of its search, the *Vaughn* Index provides sufficient facts for the Court to evaluate the DIA's invocation of the FOIA exemptions with respect to the particular documents listed. The DIA asserts that FOIA exemption 1 authorizes the withholding and redacting of documents in this case. Exemption One of the FOIA authorizes an agency to withhold or redact materials that fall within the following category:

(1) (A) specifically authorized under criteria established by an Executive order to be kept secret in the interest of national defense or foreign policy and (B) are in fact properly classified pursuant to such Executive order;

5 U.S.C. § 552(b). To invoke Exemption One, an agency must establish that it has both complied with an appropriate Executive order and properly classified materials pursuant to that order. To support its Exemption One claims, the DIA invoked

Executive Order 12,958, which authorizes the classification of (inter alia) information that concerns "intelligence sources or methods." Exec. Order No. 12,958 § 1.5(c), 60 Fed.Reg. 19,825 (Apr. 17, 1995), *reprinted in* 50 U.S.C. § 435. Executive Order 12,958 requires four conditions for classification:

(1) an original classification authority is classifying the information;

(2) the information is owned by, produced by or for, or is under the control of the United States Government;

(3) the information falls within one or more of the categories of information listed in section 1.4 of this order; and

(4) the original classification authority determines that the unauthorized disclosure of the information reasonably could be expected to result in damage to the national security, which includes defense against transnational terrorism, and the original classification authority is able to identify or describe the damage.

Exec. Order No. 12,958 § 1.2 Under this order, information may only be classified if it falls within one of the following eight categories:

(a) military plans, weapons systems, or operations;

(b) foreign government information;

(c) intelligence activities (including special activities), intelligence sources or methods, or cryptology;

(d) foreign relations or foreign activities of the United States, including confidential sources;

(e) scientific, technological, or economic matters relating to the national security, which includes defense against transnational terrorism;

(f) United States Government programs for safeguarding nuclear materials or facilities;

(g) vulnerabilities or capabilities of systems, installations, infrastructures, projects, plans, or protection services relating to the national security, which includes defense against transnational terrorism; or

(h) weapons of mass destruction.

Exec. Order 12,958 § 1.4

Plaintiff advances three arguments in opposition to the DIA's invocation of Exemption One: (1) Richardson's declaration is insufficient, because he is not the original classifying authority; (2) Richardson's declaration is conclusory; and (3) the *Vaughn* Index lacks detail and is mere boilerplate. The Court finds WG's first argument persuasive.

Plaintiff contends that the DIA has failed to show that there is a genuine issue of material fact concerning the first condition of a secret classification under Exec. Order. 12,958: an original classification authority is classifying the information. Richardson's declaration states only that "[the classification] authorities determined that the information which requires continued classification satisfies both the substantive and procedural requirements of Exec. Order 12958." (Def. Ex. J ¶ 18.)

Only certain individuals have the authority to classify information as secret under Exec. Order 12,958:

(a) The authority to classify information originally *may be exercised only by:*

(1) the President and, in the performance of executive duties, the Vice President;

(2) agency heads and officials designated by the President in the Federal Register; and

(3) United States Government officials delegated this authority pursuant to paragraph (c) of this section.[2]

2. Classification authority may be delegated to other individuals. Section 1.3(c) sets forth the regulations for delegation of classification authority

Exec. Order No. 12,958 § 1.3 (emphasis added).

In order to sustain a claim of FOIA Exemption One under Exec. Order 12,958, courts require an affidavit from an individual with classifying authority. For example, in *Campbell v. Dept. of Justice*, the Court upheld the government's Exemption One claim because of the detailed affidavits by individuals who had original classification authority. No. 89–cv–3016, 1996 WL 554511, at *5 (D.D.C. Sept.19, 1996). Initially, the Court noted that the two affiants, FBI Special Agent Earl Pitts and CIA Information Review Officer for the Directorate of Operations Katherine Stricker, both had classification authority. *Id.* The Court found their declarations sufficient because "the agency officials had the necessary classification authority to make such determinations as set forth in their declarations and that the Pitts Declaration for the FBI and the Stricker Declaration for the CIA are sufficiently detailed with respect to their national security classifications." *Id.*

In another similar case, a New Jersey district court rejected a Plaintiff's challenge to the sufficiency of a CIA declaration invoking Exemption One. *Pipko v. Central Intelligence Agency*, 312 F.Supp.2d 669, 678 (D.N.J.2004). The Court found the plaintiff's contention that the CIA's declarant was not an "original classification authority" to be "unsupported," because the declarant stated under oath the following: "[a]s a senior CIA official and under a written delegation of authority pursuant to Executive Order 12958, § 1.4(c), [he] holds original classification authority at the TOP SECRET level." *Id.* Similarly, Judge Kennedy of the United States District Court for the District of Columbia, in an unpublished decision, rejected a claim under Exemption One where the declaration was not made by a person with sufficient classification authority. *See Council for a Livable World v. Dept. of State*, No. 96–1807, slip op. at 7–8 (D.D.C. Nov. 23, 1998).

In his declaration, Richardson does not claim that he falls into any of these categories. The declaration fails to state which officials have classified the documents as secret. The classification process is described in vague terms using the passive voice:

> The information to which the (b)(1) exemption has been applied in this case has been classified at the Secret level in the interest of the national defense or foreign relations pursuant to Executive Order 12958 .... I referred the documents to the appropriate original classification authorities within the DIA. Those authorities determined that the information which requires continued classification satisfies both the substantive and procedural requirements of E.O. 12958.

(1) Delegations of original classification authority shall be limited to the minimum required to administer this order. Agency heads are responsible for ensuring that designated subordinate officials have a demonstrable and continuing need to exercise this authority.

....

(3) "Secret" or "Confidential" original classification authority may be delegated only by the President; in the performance of executive duties, the Vice President; or an agency head or official designated pursuant to paragraph (a)(2) of this section; or the senior agency official described in section 5.4(d) of this order, provided that official has been delegated "Top Secret" original classification authority by the agency head.

(4) Each delegation of original classification authority shall be in writing and the authority shall not be redelegated except as provided in this order. Each delegation shall identify the official by name or position title.

Exec. Order 12,958 § 1.3(c).

(Def.Ex. J. ¶ 18.) Unlike the declarations in *Campbell* and *Pipko,* Richardson does not have classification authority. Moreover, the declaration fails to even name the official who does have the authority to classify these documents as "Secret." As Judge Kennedy stated in *Coldiron v. United States Dept. of Justice,* "No matter how much a court defers to an agency, its review is not vacuous. An agency cannot meet its burden of justifying non-disclosure simply by invoking the phrase national security." 310 F.Supp.2d 44, 53 (D.D.C. 2004) (internal citations and quotations omitted). The DIA has not provided the Court with sufficient information from which it can conclude that an official with classification authority determined that these documents were "secret."

Accordingly, the Court will deny the Defendant's motion for summary judgment on FOIA Exemption One.[3]

## C. FOIA Exemption Three

■ The DIA claims that Exemption Three requires the redaction of all DIA personnel names. Exemption Three provides, in pertinent part, that an agency subject to FOIA need not disclose information that is:

specifically exempted from disclosure by statute ... provided that such statute (A) requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue, or (B) establishes particular criteria for withholding or refers to particular types of matters to be withheld.

5 U.S.C. § 552(b)(3). When considering a defendant's claim under Exemption Three, "The DIA asserts that 10 U.S.C. § 424 is a statute that specifically exempts the names of the DIA employees from being disclosed. Section 424 provides:

(a) Exemption from disclosure.—Except as required by the President or as provided in subsection (c), no provision of law shall be construed to require the disclosure of–

(1) the organization or any function of an organization of the Department of Defense named in subsection (b); or

(2) the number of persons employed by or assigned or detailed to any such organization or the name, official title, occupational series, grade, or salary of any such person.

(b) Covered organizations.—This section applies to the following organizations of the Department of Defense:

(1) The Defense Intelligence Agency.

10 U.S.C. § 424.

■ In reviewing an Exemption Three claim, the court does not "closely scrutinize the contents of a withheld document; instead, [it] determine[s] only whether there is a relevant statute and whether the document falls within that statute." *Krikorian v. Department of State,* 984 F.2d 461, 465–66 (D.C.Cir.1993); *Goland v. CIA,* 607 F.2d 339, 350 (D.C.Cir.1978).

■ The Court must first determine whether the claimed statute qualifies as a withholding statute. *See Medina–Hincapie v. Department of State,* 700 F.2d 737, 740 (D.C.Cir.1983). To qualify as a withholding statute under Exemption Three, "a statute must either require that matters be withheld from the public in such a manner as to leave no discretion on the issue, or establish particular criteria for withholding or refer[ ] to particular types

---

**3.** Document 43 received little attention from the parties in their briefs. The DIA has not released this document as being an inter-agency memorandum or letter referred by the agency to the Department of Defense for re-lease determination. The DIA has not invoked a FOIA exemption regarding this document. The DIA must either supplement its *Vaughn* Index or release document 43.

of matters to be withheld." *Id.* at 740–41. There can be no question that § 424 is a withholding statute intended to prevent information from disclosure. It falls within the first category of withholding statutes, because it mandates that the name, official title, occupational series, grade, or salary of DIA personnel be withheld from public disclosure.

The second part of the analysis is whether the information falls within the scope of the statute. On its face, § 424 prevents FOIA requests for the names of all DIA personnel. Plaintiff argues that the legislative history of the statute shows that Congress did not intend the statute to provide "blanket exemption from disclosure" and that the exemption should be used "sparingly to protect only that information which is truly sensitive and not as a reason to deny all FOIA requests for information about their organization and function." H.R.Rep. No. 104–832 at 50 (1997), *reprinted in* U.S.C.C.A.N. 3996, 4015–16. Plaintiff's argument is unpersuasive: the statute on its face prevents the disclosure of the names and contact information of DIA personnel. The Court will not adopt an interpretation of the statute that explicitly contradicts its plain meaning.

Plaintiff also argues that the names of DIA contracting officials are not classified, because the government discloses them in connection with its competitive procurement of goods and services. This argument, however, is inapposite. The fact that the identity of some contract officials involved in certain transactions are public does not establish that the identities of all contract officials have been made public. Accordingly, the Court will grant the Defendant's motion for summary judgment with regards to the documents redacted under Exemption Three.

### D. FOIA Exemption 5

The Plaintiff does not challenge the assertion of FOIA exemption 5. The Court will therefore grant summary judgment as to documents claimed exempt under FOIA Exemption 5.

### E. Attorneys Fees

Government asks that the Plaintiff be denied attorneys fees. Given that the Defendant's motion is not dispositive of this case, the Court believes that this issue is not ripe for determination. The Court will address the issue of attorneys fees after it has ruled on the substantive issues in this matter.

### IV. Conclusion

For the above stated reasons, the Court will grant Defendant's Motion for Summary Judgment as to the documents claimed exempt under FOIA Exemption Three and Five, and it will deny the Defendant's motion in all other respects. An appropriate Order will issue.

### *ORDER*

For the reasons stated in the accompanying Memorandum Opinion, it is hereby ORDERED that:

(1) Defendant's Motion for Summary Judgment as to the documents claimed exempt under FOIA Exemption Three and Five is GRANTED;

(2) Defendant's motion is DENIED in all other respects;

(3) the Clerk of the Court shall forward copies of this Order to all counsel of record.